APPENDIX D

## Student Conduct Protocol for Allegations of Sexual Misconduct, Including Sexual Harassment, Sexual Assault, Sexual Exploitation, Stalking, Dating Violence, and Domestic Violence

In cases that include an accusation of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence, against a student, the following provisions shall also apply. In the event of a conflict between this Appendix and Article II, this Appendix shall prevail.

### Section 1: Definitions

(a) Advisor. A person who provides a respondent or a complainant support, guidance, or advice. Respondents and complainants may be accompanied by an advisor of their choosing to any meeting with Office for Student Conflict Resolution (OSCR) staff, provided the advisor does not also serve as a witness. Advisors may not directly participate in the dialogue between the advisees and OSCR staff.

(b) Complainant. A person who claims to have been or is perceived to have been a victim of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence.

(c) Complainant Advocate. A person made available by the university, upon request by an complainant, to assist with any of the following:

   (1) Referring the complainant for appropriate medical and/or counseling services

   (2) Referring the complainant to the appropriate law enforcement agency

   (3) Assisting the complainant in the presentation of their complaint to law enforcement agencies

   (4) Informing the complainant about the university student disciplinary system, how it operates, and the role that the respondent, the complainant, and advisors play in the process

   (5) Accompanying the complainant in meetings with staff in the Office for Student Conflict Resolution and the Office of the Dean of Students

   (6) Acting as the complainant's advisor in any disciplinary proceeding

   (7) Working with the complainant and continuing to consult with the complainant after the disciplinary process has been completed

(d) Business Day. Any weekday when university offices are open for official business.

(e) Educational Sanction. An assignment, requirement, or task educationally related to the violation.

(f) Director. The Director of the Office for Student Conflict Resolution or their designee.

(g) Formal Sanction. A disciplinary status imposed by the university in response to a violation.

(h) Lead Investigator. The investigator who is primarily responsible for conducting an investigation and who must be present at all meetings with the respondent, complainant(s), and witnesses.

(i) Investigator. A person responsible for investigating allegations of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence, on behalf of the university.



(j) Notice. Notice is deemed given on the first business day after mailing, or immediately when hand delivered or sent to the recipient's email address.

(k) ODEA. The Office of Diversity, Equity, and Access.

(l) OSCR. The Office for Student Conflict Resolution.

(m) Panel. A group of three members of the Subcommittee on Sexual Misconduct appointed by the Executive Director or their designee to adjudicate a case involving sexual misconduct. A Panel includes at least one faculty member and one student.

(n) Respondent. A person who is alleged to have violated the Student Code.

(o) Respondent Advocate. A person made available by the university, upon request by the respondent, to assist with any of the following:

  (1) Informing the respondent about the university student disciplinary system, how it operates, and the role that the respondent, the complainant, and advisors play in the process

  (2) Accompanying the respondent to meetings with staff in the Office for Student Conflict Resolution and the Office of the Dean of Students

  (3) Acting as the respondent's advisor in any disciplinary proceeding

(p) SCSD. The Senate Committee on Student Discipline.

(q) Statement of Fact. A list of the conclusions reached by an adjudicator on the basis of the information collected during an investigation.

(r) Subcommittee on Sexual Misconduct. The group of faculty, staff, and students trained to adjudicate cases that include allegations of sexual misconduct, including sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence. This group is selected by OSCR staff and approved by the SCSD.

(s) Witness. A person who may have relevant information regarding the facts of the case.

**Section 2: Investigation**

(a) Intake and Review.

  (1) OSCR will oversee investigations of allegations against students. Once notified of allegations covered by this appendix, the Executive Director will appoint a team of no fewer than two investigators to conduct the investigation. One investigator will be designated as the Lead Investigator and must be present during all interviews.

  (2) The Lead Investigator and at least one other investigator will first interview any participating complainants to determine the precise nature of the allegations.

  (3) The Lead Investigator will then determine whether the allegations, if substantiated, would violate the Student Code. If not, the Lead Investigator will notify the complainant of their conclusion in a timely manner and conclude the investigation. If so, the investigation will continue.

(b) Charge Notice. The Lead Investigator will issue a written charge notice that informs the respondent of the approximate date, location, and type of incident, as well as of the section(s) of the Student Code that the respondent is alleged to have violated.

(c) Respondent Interview. The Lead Investigator and at least one other investigator will attempt to interview the respondent in a timely manner. If the respondent refuses the investigators' request for an interview, OSCR will apply a registration hold, and the investigation will continue.

(d) Information Collection and Witness Interviews. The respondent and the complainant will be given the opportunity to provide supporting information and documentation and to identify witnesses. The Lead Investigator will review all submitted materials and will attempt to interview all witnesses. The investigators may also seek additional information, documentation, and witnesses.

(e) Follow-up Interviews. The Lead Investigator may request additional meetings with the respondent and the complainant to discuss any information gathered during the investigation.

(f) Updates. As deemed appropriate by the Executive Director or their designee, OSCR will provide both the respondent and the complainant with periodic status updates during the investigation, the adjudication process, and the appeals process.

(g) Timeline. The anticipated duration of an investigation is approximately 45 calendar days following notification of the allegations, but the actual duration of each investigation may vary depending on the complexity of the investigation, the severity and extent of the allegations, the number of witnesses, and the possibility of interruption by break periods. If the duration of an investigation will substantially exceed this estimate, the Lead Investigator will provide written notice to both the respondent and the complainant of the delay and the reason for the delay.

**Section 3: Investigative Report**

(a) Initial Investigative Report. Upon completion of the initial investigation, the investigators will compile all relevant information into a written report. Please note that information about the complainant's prior sexual conduct with anyone other than the respondent would not be relevant.

(b) Report Review. Both the respondent and the complainant will be given the opportunity to review the initial report in the Office for Student Conflict Resolution during normal business hours and to submit a written response. This response may include suggested corrections to interview notes, clarifications, additional supporting documentation, requests for additional witness interviews, and any other information the author believes is relevant. Responses must be submitted no later than five business days after the report has been made available.

(c) Additional Investigation. After reviewing the submitted responses, the investigators will conduct any additional investigation they deem appropriate and revise the investigative report as necessary.

(d) Final Review and Response. Both the respondent and the complainant will be given the opportunity to review the revised report in the Office for Student Conflict Resolution during normal business hours and to submit a final written response, which may also include impact statements, character statements, statements of desired outcome, and any other information believed relevant for sanction determination. Final responses must be submitted no later than five business days after the revised report has been made available. The investigators maintain the right to redact any prohibited information submitted in a final response.

(e) Final Investigative Report. The investigators will complete a final investigative report, which will include the following:

(1) The revised investigative report.

(2) Any final responses from the respondent and the complainant.

(3) A proposed statement of fact.

(4) Proposed responsibility determinations.

(5) A rationale for the finding of fact and responsibility determinations.

**Section 4: Panel Adjudication**

(a) Appointment of Panel. The Executive Director or their designee will appoint a Panel composed of three members of the Subcommittee on Sexual Misconduct, a pool of trained university faculty, students, and staff members. Before the membership of this Panel is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the Subcommittee on Sexual Misconduct. At this point, the respondent and complainant may challenge the objectivity of any person on this list. Such a challenge must be based on a prior relationship that may result in substantial bias. The Executive Director or their designee will consider these challenges when making a final decision regarding Panel membership. At least one faculty member and one student must be appointed to each Panel. If the respondent is a graduate student, the Panel will include a representative of the Graduate College as a non-voting member. Once appointed, voting Panel members will select a faculty member to serve as Chair. Prior to serving on a Panel, all Panel members will have received appropriate annual training, developed in consultation with the university's Title IX Coordinator, on sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, domestic violence, and the physiological and psychological effects of trauma.

(b) Panel Review of Investigative Report. Panel members will have five business days to review the Final Investigative Report.

(c) Panel Questioning. After the Panel members have reviewed the Final Investigative Report, the Panel will meet with and question the investigators. The Panel will be advised by the Executive Director or their designee, who will not be allowed to vote. If the Chair determines that the Panel requires additional guidance, the Panel may consult with ODEA or the Office of University Counsel.

(d) Panel Deliberation. When the Panel members have finished questioning the investigators, the Panel will excuse the investigators and enter into closed deliberation. Non-voting members of the Panel, including the Executive Director or their designee, will remain for deliberation. The Panel will make its decisions by simple majority vote and will apply the preponderance of the information standard when deciding on a statement of fact and determining responsibility. The Panel may:

(1) Accept the recommendations and rationale of the investigators set forth in the Final Investigative Report.

(2) Reject the recommendations of the investigators and make its own determinations regarding the facts, responsibility, and rationale.

(3) Determine that additional information must be collected before a decision can be reached. In such a case, the Panel will specify the information to be collected, and OSCR will notify the respondent and the complainant that the Panel will be reconvened. Once the investigators gather the requested information or determine that it is unavailable, both the respondent and the complainant will have five business days to review any new information and provide written responses. The Panel will set a tentative date for their next meeting based on the nature of the requested information. To facilitate a timely resolution to the process, the Panel may only make this request once.

(e) Sanctions. If the Panel finds that the respondent has violated the Student Code, the Panel will decide upon an appropriate formal sanction. The Panel may also issue educational sanctions and apply additional conditions or restrictions set forth in §2.04(c) of the Student Disciplinary Procedures. The Panel must provide a written rationale for all sanctions, conditions, and restrictions.

(f) Notice of Action Taken. OSCR will provide written notification of the Panel's decision, including rationales, to both the respondent and the complainant by the end of the next business day. This notification will also include information regarding the respondent's and complainant's right to appeal the Panel's decision.

**Section 5: Appeal Procedures**

(a) Who May Appeal. Both the respondent and the complainant have the right to appeal the Panel's decision. The Dean of Students may also appeal a decision, but only if she/he believes that the decision was manifestly unfair to the university community or was not in conformity with prescribed university procedures.

(b) Grounds for Appeal. The appellant must base the appeal exclusively on one or more of the following grounds:

(1) The investigation and/or Panel adjudication was not conducted fairly or in conformity with prescribed university procedures. The appellant must show that any alleged bias or deviation from the Student Disciplinary Procedures, including this appendix, is likely to have adversely affected the outcome of the original hearing.

(2) Any sanctions imposed by the Panel were not appropriate for the violation(s) for which the student was found responsible.

(3) New, substantive information, sufficient to alter the decision, exists and was clearly not available at the time of the original investigation and/or Panel adjudication.

(c) Notice of Appeal. The appellant must submit a Notice of Appeal and all supporting documentation to the Office for Student Conflict Resolution within five business days of the date of notice of the Panel's decision. The appellant may submit a written request to extend this deadline, and upon showing good cause, the Executive Director may grant such an extension.

(d) Content of Notice of Appeal. The Notice of Appeal must contain at least the following: (1) specific grounds for appeal; (2) specific outcome requested; and (3) the appellant's reasons in support of the grounds identified and outcome requested. The appellant must submit the Notice of Appeal in writing and with the appellant's signature. Oral appeals are not accepted. If only one party submits a Notice of Appeal, OSCR will notify the other party of the submission and grant the other party access to all submitted documentation. The other party will have five business days from the date of notification to submit a written response to be considered as part of the appeal. If both parties submit a Notice of Appeal, both parties will be informed, granted access to all submitted documentation, and given five business days to submit a written response.

(e) Sanction Held in Abeyance Pending Appeal. The effective date of any formal or educational sanction will be held in abeyance automatically during the period in which the appeal may be filed and, once an appeal is filed, until the committee reaches a decision on the appeal; however, the Executive Director has the discretion to require that certain behavioral restrictions, such as no contact directives, remain in place pending the appeal.

(f) Appellate Review.

(1) The Chair of the SCSD or their designee will identify two faculty members of the SCSD and one student member of the SCSD to consider any appeals of the Panel's decision. These individuals will constitute the Appeal Committee. Before the membership of this Appeal Committee is finalized, OSCR will provide both the respondent and the complainant with a list of all members of the SCSD. At this point, the respondent and complainant may challenge the objectivity of any person on this list. Such a challenge must be based on a prior relationship that may result in substantial bias. The Chair of the SCSD or their designee will consider these challenges when making a final decision regarding Appeal Committee membership. Prior to serving on an Appeal Committee, all members will have received appropriate annual training, developed in consultation with the university's Title IX Coordinator, on sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, domestic violence, and the physiological and psychological effects of trauma. If the Chair of the SCSD does not serve on the Appeal Committee, she/he will select one of the faculty members to chair the Appeal Committee.

(2) The Appeal Committee will review all materials that were provided to the Panel, the Notice(s) of Appeal, any documentation provided in support of the Notice(s) of Appeal, and any responses to the Notice(s) of Appeal in a timely manner.

(3) The Appeal Committee will meet to consider the appeal and will be advised by the Executive Director or their designee, who will not be allowed to vote. Neither the respondent nor the complainant will be allowed to attend the deliberations of the Appeal Committee, but the Executive Director may be present or authorize other non-voting parties, such as University Counsel, to be present in an advisory role.

(g) Deliberations. The Appeal Committee will decide by simple majority vote whether the appellant has met any of the grounds for appeal. The decision of the Appeal Committee is final and binding on all parties.

(1) Authority of the Appeal Committee. If the Appeal Committee determines that one of the three grounds for appeal has been met, the Appeal Committee may:

(2) Affirm the Panel's decision.

(3) Reverse the Panel's decision and dismiss the case.

(4) Remand the case to the original Panel or a new Panel for a new adjudication process.

(5) Increase or decrease any sanctions imposed.

(h) Notice of Decision. OSCR will communicate the decision to the respondent and the complainant within five days of the date the Appeal Committee reached its decision.

**Section 6: Petitions to the Subcommittee on Sexual Misconduct**

(a) Persons who have been dismissed from the university for disciplinary reasons may petition for permission to re-enter the university.

(b) A petitioner is not a member of the university community. Petitioners must demonstrate that they are fit to return to the academic community, not simply that they have completed all listed sanctions in the dismissal letter.

(c) In order for a petition to be considered:

(1) The petition must be filed before November 1 for fall petition requests and before March 15 for spring requests;

(2) The petitioner must provide documentation that all educational requirements and conditions have been fully and completely satisfied.

(d) This petition should minimally include:

(1) A description of the incident(s) for which the sanction was assigned and the responsibility the student had in the violation;

(2) A description of the behavioral changes the petitioner has made since the incident(s) and completion of the sanction(s);

(3) The petitioner's anticipated graduation date and the career and/or additional education plans he/she has following graduation.

(e) The Executive Director or their designee will appoint a Panel composed of three members of the Subcommittee on Sexual Misconduct to hear the petition. At least one faculty member and one student must be appointed to the Panel. If the respondent is a graduate student, the Panel will include a representative of the Graduate College as a non-voting member. Once appointed, voting Panel members will select a faculty member to serve as Chair.

(f) Both the petitioner and the complainant will be invited to appear in person before the Panel to discuss the petitioner's request for readmission in ten-minute statements. All participants may be accompanied by an advisor to the petition hearing, but this advisor may not actively participate in the petition hearing. Both petitioners and complainants have the option of participating in the process over the phone, by video conference, or in person. Any witness testimony may be presented by written statement only.

(g) The complainant and the petitioner will present their statements to the Panel separately, with the complainant being invited to present their statement first. Neither the complainant nor the petitioner will be present while the other is making their statement.

(h) Petitions to the subcommittee may not be appealed by the petitioner or the complainant and are not audio recorded.

(i) The Panel will make its decisions by simple majority vote.

(j) The Panel may:

(1) Deny the petition and assign a new date and new requirements for the next consideration of the petition;

(2) Grant the petition and allow the petitioner to pursue the readmission process.

(k) Petitioners granted permission to pursue readmission are assigned the formal sanction of Conduct Probation until Graduation, unless a Panel determines strong mitigating factors warrant a lesser formal sanction. The Panel may also issue behavioral restrictions or educational sanctions that they deem appropriate.

(l) The Panel's decision to grant the petitioner the right to pursue the readmission process does not abrogate the right of any college to deny readmission on the basis of scholarship.

**Section 7: Role of the Title IX Coordinator in the Student Discipline System.**

(a) Advisory Role of the Title IX Coordinator. The Executive Director and OSCR investigators may seek advice from the Title IX Coordinator or their designee regarding investigations, possible interim measures or other remedies, training, and compliance with Title IX and other federal, state, or local laws and regulations.

(b) Review by Title IX Coordinator. The Title IX Coordinator or their designee will review all sexual harassment, sexual assault, sexual exploitation, stalking, dating violence, and domestic violence cases upon their completion to determine whether the university needs to take additional action that was not available through the disciplinary process.