IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN DOE, | ) |
| | ) Case No: 2:19-cv-02054 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE: COLIN S. BRUCE |
| | ) |
| BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY PROTECTION ORDER AND/OR PRELIMINARY INJUNCTION

### Introduction

On March 6, 2019, Plaintiff, John Doe, filed his Complaint for Injunctive and Other Relief relative to the University of Illinois' decision to suspend him from the University following a lengthy and flawed disciplinary process.[1] Plaintiff was initially notified by the University on or about June 4, 2018, that he was the subject of a Title IX Complaint filed by Jane Roe relative to a consensual sexual relationship that had occurred on or about October 7, 2017. At the time of this notification, Plaintiff had already completed his graduation requirements, had participated in the University's graduation ceremony, and was simply waiting to receive his Masters of Business Administration degree by mail. Furthermore, at the time he received notice of the Title IX Complaint,, Plaintiff had already accepted a job as a project manager with a company in Boston,

---

[1] See Plaintiff's Complaint [Doc. 1], which is incorporated herein by reference.

Massachusetts. Plaintiff's continued employment and his employer's willingness to sponsor him for his H-1B visa[2] are both dependent on his receipt of his MBA degree from the University.

As set forth herein, Plaintiff seeks emergency injunctive relief to preserve his employment and lawful status in the United States so that the matter *sub judice* can be decided on the merits and so that he can avoid the irreparable harm associated with the loss of his degree, employment and immigration status. Plaintiff has a strong likelihood of prevailing on the merits of this case as: (1) he has a clear property and/or liberty interest in his degree, employment, and immigration status that has been and will continue to be taken without due process in violation of the Fourteenth Amendment to the United States Constitution; (2) he was unlawfully discriminated against by the University on the basis of his gender in violation of 20 U.S.C. § 1681; and (3) the University violated its contract with him.

While the threat of irreparable harm to Plaintiff is extraordinary, there is no prejudice to Defendant should injunctive relief be granted. While the Defendant claims a need to protect its students[3], this excuse fails as Plaintiff is no longer a student and will pose no threat to the University's ability to provide an educational setting free from discrimination on the basis of sex. Therefore, Plaintiff is entitled to immediate injunctive relief to preserve the status quo while this litigation moves forward.

### Facts

Plaintiff has been advised by his employer that his employment will be terminated on April 15, 2019 should he not obtain his degree and that the deadline for his visa sponsorship is April 1,

---

[2] Plaintiff, an Indian citizen, is currently lawfully in the United States pursuant to his post completion opt visa, that will expire on or about July 2, 2019.
[3] http://www.news-gazette.com/news/local/2019-03-08/second-ex-student-sues-ui-over-outcome-sex-assault-case.html?fbclid=IwAR00zseSRMOiRQ4j0OSr27Qtmb96F-OJuNF3qFG83cAb-2in6pix_7Zhpsk

2

2019. Practically speaking, if Plaintiff does not have his MBA degree prior to April 1, 2019, with enough time for his employer to sponsor his H-1B visa, he will not be permitted to remain in the United States once his current visa expires on or about June 30, 2019.

The University utilizes what is commonly referred to as the "Investigative Model" for adjudicating disciplinary claims of sexual misconduct. Rather than attend a hearing where the parties can be heard by a Hearing Panel, two investigators are assigned to interview the parties, obtain witness statements and collect documentary evidence.[4] The investigators prepare a written report, which is relied upon by a Hearing Panel to determine whether the Respondent has violated University policies and, if so, what sanction is appropriate. *Id.* Despite his protests and request for an in-person hearing, Plaintiff was denied a meaningful opportunity to be heard. He was also denied the opportunity to cross-examine adverse witnesses or present oral testimony from his own witnesses.

## Law and Argument

I. **Defendants should be enjoined from withholding Plaintiff's MBA degree and/or enforcing its disciplinary sanctions because the University violated Plaintiff's Due Process rights under the Fourteenth Amendment to the United States Constitution, unlawfully discriminated against Plaintiff on the basis of his gender, and breached its contract with Plaintiff.**

A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need. *Turnell v. Centimark Corp.,* 796 F. 3d 656, 661 (7th Cir. 2015), *citing Goodman v. Ill. Dep't of Fin. and Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir.2005). In the Seventh Circuit, courts must engage in a two-step analysis to decide whether such relief is warranted. *Id.* In the first phase, the party seeking a preliminary injunction must make a threshold showing that: (1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim

---

[4] *See* Plaintiff's Complaint [Doc. 1] ¶¶ 63-115.

prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits. *Id*. at 662; *see also Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir.1999).

If the movant makes the required threshold showing, then the court must consider: (4) the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted; and (5) the effects, if any, that the grant or denial of the preliminary injunction would have on nonparties (the "public interest"). *Id.* The court weighs the balance of potential harms on a "sliding scale" against the movant's likelihood of success: the more likely he is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor. *Id.*

It is well established that the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Given this limited purpose, and in light of the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal - and evidence that is less complete - than in a trial on the merits. *Id.*

### A. *Plaintiff is likely to succeed on the merits because Defendant's Title IX adjudication process violates the Due Process Clause.*

Plaintiff has a reasonable likelihood to succeed on his claim that Defendant violated his right to due process pursuant to the Fourteenth Amendment and that Defendant breached its contract with Plaintiff. In analyzing a procedural due process claim, a court must: (1) identify a protected property or liberty interest at stake; and (2) determine what process is due under the circumstances. *Charleston v. Board of Trustees of University of Illinois at Chicago*, 741 F.3d 769,

772 (7th Cir. 2013). Here, Plaintiff has both a property and/or a liberty interest in his MBA degree as well as in his employment and immigration status. The Seventh Circuit has recognized a valid liberty interest in the employment context where the disparagement of an employee's good name, reputation, honor, or integrity is called into a question in a manner that makes it impossible to maintain employment in his chosen field. *Khan v. Bland,* 630 F.3d 519, 535 (7th Cir. 2010). Such a property interests exists particularly where the governmental deprivation is an alteration of legal status and deprives the employee of a securely held right, which, combined with the defamation, justifies invocation of procedural safeguards. *Id.* at 534.

Here, the University's deprivation of Plaintiff's MBA degree, which was earned prior to the allegations being made against him, will cause tangible loss of employment and immigration opportunities. As such, Plaintiff has a recognizable liberty interest that cannot be taken by Defendant without due process.

In addition to the liberty interest in his degree, employment and immigration status, Plaintiff has a property interest in the same. While the Seventh Circuit has rejected the proposition that an individual has a stand-alone property interest in an education at a state university, a Plaintiff can establish a legitimate property interest via the existence of an express or implied contract with the University. *Charleston*, 741 F.3d at 772. Illinois recognizes that the relationship between a student and an educational institution is, in some aspects, contractual. *Ross v. Creighton University,* 975 F.2d 410, 416 (7th Cir. 1992). In the instant matter, Plaintiff entered into an express and/or implied contract with the University of Illinois.[5] Plaintiff relied on the policies and procedures set forth in the Student Handbook in choosing to enroll[6] at the University and was

---

[5] *See* Plaintiff's Complaint [Doc. 1], ¶¶ 103-115.
[6] *Id.* at ¶105.

5

therefore entitled to the protections set forth in the University's policies. Specifically, the University agreed to be bound by its policies, including but not limited to the following:[7]

> a. A student at the University of Illinois at the Urbana-Champaign campus is a member of a University community of which all members *have at least the rights and responsibilities common to all citizens*, free from institutional censorship; *affiliation with the University as a student does not diminish the rights or responsibilities held by a student* or any other community member as a citizen of larger communities of the state, the nation, and the world. (Emphasis added).

> b. Any rules or regulations considered necessary to govern the interaction of the members of the University community are intended to reflect values that community members must share in common if the purpose of the community to advance education and to enhance the educational development of students is to be fulfilled. These values include the *freedom to learn*, free and open expression within limits that do not interfere with the rights of others, free and disinterested inquiry, intellectual honesty, sustained and independent search for truth, the exercise of critical judgment, respect for the dignity of others, and personal and institutional openness to constructive change. *The following enumeration of rights shall not be construed to deny or disparage other rights retained by these individuals in their capacity as members of the campus community or as citizens of the community at large*. (Emphasis added).

Both Plaintiff and Defendant acted in conformity with the contract during his time at the University. Plaintiff paid tuition, remained in good standing with the University and otherwise performed his obligations under the contract. In performing his contractual obligations, Plaintiff completed all of his MBA coursework and satisfied every graduation requirement. He participated in the graduation ceremony and accepted employment, which was offered to him based on his receipt of a MBA degree. Had Plaintiff failed to uphold his end of the bargain with the University (e.g. by failing to pay tuition or otherwise remain in good standing), it is undeniable that he would not have been removed from the University. Defendants on the other hand, breached the contract

---

[7] *Id.* at ¶106.

by failing to tender Plaintiff's MBA degree, which was earned in full, and abandoned its contractual obligations relative to Plaintiff's rights under its policies.

Finding the existence of a legitimate liberty or property interest is only one part of determining whether Plaintiff's constitutional due process rights were violated. The Court must also determine whether the University afforded Plaintiff due process under the circumstances. *Charleston*, 741 F.3d at 772. It is well settled that student disciplinary proceedings at state-funded universities must be conducted in conformity with the Due Process Clause of the Fourteenth Amendment. *Goss v. Lopez*, 419 U.S. 565, (1975). The fundamental requirements are, of course, notice and an opportunity to be heard. *Id.* at 579. *See also, Remer v. Burlington Area School Dist.*, 286 F.3d 1007, 1010 (7th Cir. 2002).

As this Honorable Court is aware and has aptly noted in its Order dated July 28, 2018 in *Doe v. The Board of Trustees of the University of Illinois*, Case No. 17-cv-2180, "one must have grave concern and serious doubt over the constitutionality of Defendant's sexual misconduct investigation and adjudication process." [8] There is no doubt that Plaintiff was denied a meaningful opportunity to be heard in this case. The use of the "Investigator Model" eliminates any semblance of due process or protection despite the serious and impactful nature of the charges. Contrary to the Court's cautionary words in *Doe, supra*, the Defendants subjected Plaintiff to the same system in the weeks and months thereafter.[9] Equally important and concerning is Plaintiff's inability to effectively challenge the credibility of his accuser and other adverse witnesses. The use of the "Investigator Model" does nothing to assess credibility of witnesses and deprives the Hearing Panel from obtaining the truth.

---

[8] *See* this Honorable Court's 7/24/2018 Order in 2:17-cv-02180. [Doc. 54].
[9] However, some progress has been made, presumably while Plaintiff was denied the opportunity to be heard in his case, as the University has now modified its policy to allow the parties to be heard by the Hearing Panel.

Plaintiff faced charges of sexual assault, which have the ability to destroy his future and reputation. And despite the clear liberty and/or property interests in his degree, employment and immigration status, Plaintiff is about to face undeniable and irreparable consequences based on an unconstitutional disciplinary process. Plaintiff has established a reasonable likelihood of success on the merits of his Due Process claim and is therefore entitled to injunctive relief.

### B. *Plaintiff is likely to succeed on the merits because Defendant breached its contract with Plaintiff.*

The nature of Plaintiff's contract with Defendant is set forth above and in his Complaint. Plaintiff entered into a valid contract with Defendant whereby Plaintiff was to pay tuition and otherwise remain in good standing with the University. Upon completion of his graduation requirements, the University was to award the degree earned by Plaintiff. Defendant also promised to follow its own policies and procedures. Despite Plaintiff's fulfillment of his contractual obligations, he was denied the degree that he earned and, as a result, will face catastrophic non-economic damages absent injunctive relief.

### C. *Plaintiff is likely to succeed on the merits because he was discriminated against by Defendant on the basis of his gender.*

Title IX of the Educational Amendments Act of 1972 ("Title IX"), codified at 20 U.S.C. §1681, *et seq.*, prohibits discrimination on the basis of sex in educational institutions that receive federal funding. A plaintiff's "erroneous outcome" claim under Title IX is based on allegations that "the plaintiff was innocent and wrongly found to have committed an offense." *Doe v. University of Chicago*, 299 F.Supp.3d 939, 953 (N.D. Ill., 2017). A plaintiff making an erroneous outcome claim must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding. *Id.* A plaintiff may allege, for example, "particular evidentiary weaknesses behind the finding of an offense such as a motive to lie ... particularized

8

strengths of the defense ... [or] particular procedural flaws affecting the proof." *Id.* Once the plaintiff has established doubt concerning the accuracy of the proceeding, he must next "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.*

In the matter *sub judice*, Plaintiff has clearly shown particular procedural flaws affecting the outcome of his case. He has also articulated specific circumstances suggesting that gender bias was a motivating factor behind the erroneous findings.[10] Given the flawed procedural process, the public pressure to reduce sexual violence against women and the gender biased training materials provided to those involved in the disciplinary process, it is likely that Plaintiff will succeed on the merits. Again, the consequences facing Plaintiff are serious and irreparable and he is therefore entitled to injunctive relief.

**II.**     ***Absent injunctive relief, Plaintiff will be irreparably harmed as he faces the loss of his employment and deportation from the United States of America and Plaintiff has no adequate remedy at law.***

Plaintiff completed his graduation requirements, participated in his graduation ceremony and accepted a job based on his anticipated MBA degree all before he was notified of the purported sexual assault that had occurred approximately eight months earlier. Although his employer has been understanding of his plight stemming from the flawed disciplinary process, Plaintiff has been advised that his employment will be terminated on April 15, 2019, if he does not have his degree. Even more urgent is the fact that his continued employment and ability to remain in the United States is dependent upon to his employer's sponsorship of Plaintiff for a H-1B visa. The deadline for applying for the H-1B visa is April 1, 2019. As such, if Plaintiff does not possess his MBA

---

[10] *See* Plaintiff's Complaint [Doc. 1], ¶¶ 147-157.

9

degree by April 1, 2019, with sufficient time for his employer to complete the application, Plaintiff will be terminated from his job and subject to deportation from the United States.

In addition to the loss of employment, Plaintiff's inability to remain in the United States will, from a practical standpoint, prohibit him from continuing with this litigation as he will have no meaningful opportunity to challenge the University's flawed disciplinary procedures. While, in theory, Plaintiff could recoup economic damages through continued litigation, there is no adequate remedy at law to secure his employment or immigration status as a lawful resident of the United States. There is no doubt that Plaintiff faces irreparable harm if the University is permitted to continue withhold his degree.

### III.    *The irreparable harm to Plaintiff if injunctive relief is wrongfully denied is exponentially higher than the harm to Defendant should injunctive relieve be wrongfully granted.*

Defendant can point to no evidence that the University would suffer any semblance of the catastrophic consequences confronting Plaintiff. The only conceivable argument that Defendant can make is that they have an obligation to ensure the safety of their students and campus. Such an argument is illogical in this case because Plaintiff is no longer a student at the University and is living in Massachusetts. In addition, Plaintiff has never faced any other disciplinary or criminal charges that would suggest he poses a risk to anyone.

Likewise Defendant cannot claim harm from being enjoined in its effort to maintain its disciplinary procedure as is. The University has already recognized the inequity in the Title IX process that Plaintiff faced, as the policy has been modified to allow students an in-person hearing. More importantly, because Defendant is a state actor, it has no recognizable interest in maintaining an adjudicatory scheme that mocks traditional safeguards and rights that have long been essential to the procedural due process guaranteed by the Fourteenth Amendment. *See Mnyofu v. Board of Educ. Of Rich Township High School Dist. 227,* 2016 WL 1319736, *3, (N.D. Ill., 2017). As such,

the potential harm to Plaintiff is enormous while Defendant faces no adverse consequences, which favors the granting of injunctive relief.

### IV.   *Public interest supports the injunctive relief sought.*

Public interest always favors the application for relief if the applicant demonstrates both a likelihood of success on the merits and irreparable injury. *AT&T Co. v. Winback & Conserve Program*, 42 F.3d 1421, 1427 n.8 (3rd Cir. 1994). More significantly, it is axiomatic that the public interest always favors the application of connotational norms and protections. *Mnyofu*, 2016 WL 131976, at *Id; see also, Left Field Media LLC v. City of Chicago,* 137 F.Supp.3d 1127, 1133 (N.D. Ill., 2015). Here, the public has a strong interest in ensuring that its colleges and universities establish policies that are in accordance with constitutional ideals and norms.

### Conclusion

Due to Defendant's unconstitutional disciplinary process in matters involving alleged sexual misconduct, Plaintiff has wrongfully been denied his MBA degree, which he had fully earned at the time the allegations were made. Rather than provide Plaintiff with an opportunity to be heard and to test the credibility of his accuser, he was subjected to an "Investigator Model" of adjudication, which, unsurprisingly, found him responsible for the violation and suspended him from the University for two years. Amazingly, the Hearing Panel determined that he was not responsible for alleged non-consensual sexual contact with the accuser during the first two sexual interactions she had with Plaintiff on the night in question, but responsible for the third encounter that transpired that same evening.

This unlawful process has stripped Plaintiff of his MBA degree which he had already earned. As a result, Plaintiff's employment will be terminated and he will be prohibited from applying for the H-1B visa that he needs to lawfully remain in the United States. Plaintiff has

strong claims against Defendant and, as such, has clearly demonstrated a reasonable likelihood of success on the merits of his claim. Due to the severity of the irreparable harm, particularly when compared to the non-existent impact injunctive relief would have on Defendant, Plaintiff should be granted injunctive relief enjoining Defendant from continuing to improperly hold his MBA degree during the pendency of this litigation.

Such injunctive relief would not only serve to maintain Plaintiff's status quo from an employment and immigration status, but will also allows him to challenge the disciplinary process through the judicial system consistent with an overwhelming public interest in ensuring that citizens receive basic due process rights in these situations.

Respectfully submitted,

/s/ Eric F. Long

Eric F. Long
Friedman & Nemececk, L.L.C.
1360 E. 9th Street, Suite 650
Cleveland, Ohio 44114
T: (216) 928-7700
F: (216) 820-4659
E: efl@fanlegal.com

Attorney for Plaintiff