E-FILED
Thursday, 21 March, 2019  09:05:52 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS - URBANA

JOHN DOE,                  )
                                  )
        Plaintiff,       )
                                  )
v.                            )     Case No. 19-CV-02054
                                  )
BOARD OF TRUSTEES OF THE    )     Honorable Colin S. Bruce
UNIVERSITY OF ILLINOIS,      )     Magistrate Eric I. Long
                                  )
        Defendant.     )
                                  )

### DEFENDANT BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS' MOTION FOR LEAVE TO FILE MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY PROTECTION ORDER AND/OR PRELIMINARY INJUNCTION IN EXCESS OF 15 PAGES

Defendant Board of Trustees of the University of Illinois (the "University"), through its undersigned counsel, hereby moves for leave to file a memorandum in opposition to Plaintiff John Doe's motion for emergency temporary protection order and/or preliminary injunction in excess of 15 pages. In support of this motion, the University states as follows:

1.      On March 6, 2019, Plaintiff filed his Complaint, seeking to allege claims against the University for violation of his constitutional procedural due process rights, violation of Title IX of the Education Amendments of 1972, and breach of contract under Illinois law. Doc. No. 1. On March 13, 2019, Plaintiff filed a Motion for Emergency Temporary Protection Order and/or Preliminary Injunction and a supporting Memorandum. Doc. Nos. 4-5.

2.      To fully respond to the arguments in Plaintiff's Motion and Memorandum and to explain why Plaintiff fails to fails to meet the standards for a preliminary injunction, the University requires pages in excess of the 15-page limitation for briefs set forth in Local Rule 7.1.

3.      Specifically, the University anticipates it will require up to 30 total pages for its memorandum in opposition to Plaintiff's motion for emergency temporary protection order and/or preliminary injunction.

4.      Pursuant to Local Rule 7.1(f), the University's proposed memorandum in opposition to Plaintiff's motion for emergency temporary protection order and/or preliminary injunction is attached to this Motion as Exhibit A.

5.      Plaintiff will not suffer prejudice by the granting of this motion, and the University is filing this motion to aid the Court's resolution of Plaintiff's motion for emergency temporary protection order and/or preliminary injunction.

WHEREFORE, the University respectfully requests that the Court grant leave to file a memorandum in opposition to Plaintiff's motion for emergency temporary protection order and/or preliminary injunction not to exceed 30 pages.

Respectfully submitted,

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

By:＿＿＿/s/Peter G. Land＿＿＿＿＿＿＿
        One of Its Attorneys

Peter G. Land
Peter.Land@huschblackwell.com
Gwendolyn Morales
Gwendolyn.Morales@huschblackwell.com
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
312.526.1631

DocID: 4824-8714-9195.2

1985671.1

# EXHIBIT A

1985671.1

DocID: 4824-8714-9195.2

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS - URBANA**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-CV-02054 |
| | ) | |
| BOARD OF TRUSTEES OF THE | ) | Honorable Colin S. Bruce |
| UNIVERSITY OF ILLINOIS, | ) | Magistrate Eric I. Long |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS'
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR EMERGENCY
TEMPORARY PROTECTION ORDER AND/OR PRELIMINARY INJUNCTION**

Plaintiff John Doe ("Plaintiff" or "Doe") was a second-year graduate MBA student at the University of Illinois at Urbana Champaign (the "University") during the 2017-2018 school year. On June 4, 2018, after Plaintiff had completed his classwork for his degree but before all of his grades were known and before the University had certified that he had fulfilled the requirements of his degree, Plaintiff was accused of sexual assault. Pursuant to its policies, the University placed a hold on Plaintiff's record, which resulted in the withholding of his degree pending the resolution of the complaint. Plaintiff was notified of the hold on June 4, 2018.

On September 27, 2018, pursuant to the University's procedure in effect at the time for resolving sexual misconduct complaints (which has now changed), an adjudicating panel found Plaintiff responsible for sexual assault and dismissed him from the University. Plaintiff appealed, his appeal was granted, and the matter was remanded for consideration by a new adjudicating panel. On November 13, 2018, a second panel, composed of different members, made a more specific finding that the complainant, Jane Roe ("Roe"), was incapacitated and unable to consent to the third act of sexual intercourse between Plaintiff and Roe that occurred that night (as

evidenced by the fact that Roe had vomited as a result of alcohol consumption in Plaintiff's presence before the third sexual encounter), and Plaintiff had accordingly violated the University's sexual misconduct policy. Based on this finding, the second panel imposed a sanction of dismissal, which as applied to Plaintiff meant the withholding of his degree during the period of dismissal. Plaintiff appealed the determinations of the second panel, and on December 10, 2018, the University affirmed its findings and sanctions.

On March 6, 2019 – approximately nine months after the hold was first placed on Plaintiff's record and three months after the University upheld the second panel's findings and sanctions – Plaintiff filed his Complaint in this lawsuit. On March 13, 2019, Plaintiff filed his Motion for Emergency Temporary Protection Order and/or Preliminary Injunction and supporting memorandum.[1]

In his supporting memorandum ("Memorandum" or "Mem."), Plaintiff seeks an order from this Court ordering the University to grant him an MBA degree.[2] Plaintiff's pleadings lack, however, any reference to degree-conferral policies and related disciplinary provisions at the University. They also lack any legal authority supporting the drastic judicial action of ordering a higher educational institution to award a degree in contravention of existing policy. Moreover, the Memorandum relies on potential harm to Plaintiff's employment and immigration status with a third-party employer, but the Complaint allegations assert that immigration issues are "likely"

---

[1] As of the date of this Response, the Board of Trustees of the University of Illinois has not been served in this action. Nevertheless, because Defendant is aware of Plaintiff's Complaint and Motion, it previously appeared and now files this Response despite the lack of official service.

[2] Plaintiff's Motion itself lists in the requests for relief the following additional items to include in an order from this Court: (1) enjoin the University from "continuing its sanction against Plaintiff stemming from the University's Title IX Investigation involving Plaintiff and Jane Roe"; (2) "expunge and/or otherwise seal Plaintiff's disciplinary records from all University records"; and (3) represent Plaintiff's good standing to inquiring third parties." Mot. at pp. 1-2. The arguments regarding irreparable harm or the balance of the harms do not address any of these potential aspects of judicial relief, leaving them unsupported for purposes of the issues before this Court. Accordingly, this Court should deny those requests, which are also not addressed in any more detail in the University's responsive brief.

DocID: 4824-8714-9195.2

and that Plaintiff's chances of securing an H-1B visa without an MBA are "drastically reduced" rather than not possible.

For these reasons and those presented below, Plaintiff's request for an order directing the University to confer a degree to Plaintiff should be denied.

I.    **The University's Policies and Procedures**

A.    **The University's Policies Regarding Degree Conferral.**

The University maintains and enforces rules relating to its students, their academic requirements, and the impact of disciplinary matters through the University's Student Code ("Code"), Student Disciplinary Procedures, and the regulations of the Board of Trustees for the guidance of the staff of the University ("Statutes").

First, the Code includes descriptions of academic requirements relating to graduation and the conferral of degrees, and specifically provides that the University may withhold conferring a degree pending ongoing disciplinary procedures that extend beyond a student's completion of academic work. J. Brown Aff. ¶ 4.[3] Specifically, the Code states:

> The Senate Committee on Student Discipline has the right to withhold privileges of the academic community, including the conferral of the degree itself, at any point prior to the conferral of the degree. In instances in which dismissal is a possibility for disciplinary infractions, the conferral of the degree is withheld until the disciplinary action has been resolved. *Id.* at Attach A, at §1-311(b)

The Student Disciplinary Procedures similarly explicitly state that the University may withhold awarding a student's degree while discipline is pending:

- Deferral of the degree. The Senate Committee, appropriate subcommittee, or the Executive Director may withhold the conferral of the degree until the disciplinary action has been resolved. *Id.* at Attach B, §2.04(c)(iii).

- Dismissal shall be imposed upon a student when the appropriate subcommittee or the SCSD determines that the student's relationship with

---

[3] Justin Brown's Affidavit is attached as Exhibit 1.

the university must be terminated. *While dismissed, a student may not enroll in, or attend, any courses at the university and may not be awarded a degree from the university.* After a specified period of time, the dismissed student may petition the appropriate subcommittee for permission to pursue readmission to the university (or, if applicable, the release of their degree). *Id.* at §2.04(b)(v) (emphasis added).

Further, Illinois law and the Statutes provide authority relating to the University's procedures for awarding degrees and diplomas and verifying completion of academic requirements relating to such awards, including the following:

- The trustees, on recommendation of a majority of the faculty, may authorize the regent of the University to issue certificates of scholarship . . . and on like recommendation of the faculty, the trustees may authorize the regent, as president of the University, to issue diplomas to such persons as shall have completed satisfactorily the required studies, and sustained the examinations therein, conferring such literary and scientific degrees as are usually conferred by universities for similar or equivalent courses of studies. 110 ILCS 305/10.

- The president . . . shall issue diplomas conferring degrees, but only on the recommendation of the appropriate senate and by authority of the Board of Trustees. A. McKinney Aff. Attach A at Art. I, Section 2.[4]

- Each senate . . . shall determine for its campus the manner in which the faculty shall recommend candidates for earned degrees, diplomas, and certificates to be conferred by the president under the authority of the Board of Trustees. *Id.* at Art. II, Section 1(d).

In short, under the Statutes, a degree can only be conferred by the President of the University once the student has been certified and recommended by the faculty. A. McKinney Aff. ¶ 3.

**B.     The University's Sexual Misconduct Policy and Procedures Applicable to Alleged Sexual Misconduct Policy Violations.**

The University maintains and enforces a Sexual Misconduct Policy ("Policy"). *See* Compl. ¶¶ 63-64 & Ex. A at §1-111. The Policy contains definitions of key terms, including a

---

[4] Allison McKinney's Affidavit is attached as Exhibit 2.

definition of "consent" that states, in relevant part, that "[a] person cannot consent to sexual activity if such person is unable to understand the nature, fact, or extent of the activity or give knowing consent due to circumstances," including where "the person is incapacitated due to the use or influence of alcohol or drugs." *Id*. ¶ 69 & Ex. A at §1-111(c)(3). The Code informs students that they will be subject to discipline for conduct that violates the Policy, including sexual assault. Code §1-302(b); J. Brown Aff. ¶ 5.

When the University learns of alleged Policy violations, it investigates and resolves them pursuant to the procedures contained in its Student Conduct Protocol for Allegations of Sexual Misconduct, Including Sexual Harassment, Sexual Assault, Sexual Exploitation, Stalking, Dating Violence, and Domestic Violence ("Protocol"), which is attached as Appendix D to the Student Disciplinary Procedures.[5] Compl. ¶¶ 70, 73 & Ex. B. The Protocol in effect at the relevant time provided opportunities for the parties to present their side of the story to two investigators, including in their own interviews; by identifying documents and witnesses for the investigators to collect and interview; by reviewing and responding to information gathered by the investigators and statements of the other party and witnesses; and by requesting the investigators conduct additional investigation, including asking questions to the other party or witnesses. *See id*. ¶¶ 75-88 & Ex. B at Sections 2-3.

Under the Protocol in effect at the time, when the investigation process concluded, the investigators prepared a final investigation report to be considered by a three-member adjudicating panel. *See id*. ¶¶ 88, 91-93 & Ex. B at Sections 3(e), 4. The adjudicating panel could accept the recommendations and rationale of the investigators, reject these recommendations and

---

[5] This Section discusses the Protocol in effect at the time of Roe's complaint against Plaintiff and followed by the University in its resolution of that complaint. The Protocol has since been revised, including by adding the opportunity for the parties to present testimony directly to the adjudicating panel. J. Brown Aff. ¶ 7.

make its own determinations, or determine that additional information was needed. *Id*. ¶¶ 97-99 & Ex. B at Section 4(d). If the panel found the respondent violated the Policy, it would also decide upon an appropriate sanction. *Id*. ¶ 100 & Ex. B at Section 4(e). Both parties then had the right to appeal the panel's decision to a three-person appellate committee. *Id.* ¶ 102 & Ex. B at Sections 4(f), 5.

## II.    The Sexual Assault Complaint Against Plaintiff and the Withholding of Plaintiff's Degree.

On June 4, 2018, the University notified Plaintiff that he was accused of sexual assault relating to sexual activity that occurred the night of October 6-7, 2017 between Plaintiff and Jane Roe ("Roe"), a fellow MBA student at the University. Compl. ¶¶ 2, 6, 27-54. Plaintiff was also notified on June 4, 2018 that a disciplinary hold had been placed on his account, which restricted him from graduating from the University. J. Brown. Aff. ¶ 9.

As of June 4, 2018, Plaintiff had completed his classwork for his MBA degree. Compl. ¶¶ 6, 16. He had also participated in the University's commencement, or graduation ceremony, which was held on May 12, 2018. Compl. ¶¶ 6, 16; A. McKinney Aff. ¶¶ 5, 9. However, as of that date, the University had not certified that he passed his final spring semester courses and otherwise completed all academic and other requirements for his degree. A. McKinney Aff. ¶ 10. In fact, Doe's transcript as of June 4 reflected a grade of "NR," or "Not Reported" for one of Plaintiff's courses from the spring 2018 semester. *Id*.

After spring semester classes end, students scheduled to graduate that spring are permitted to walk in commencement, which is typically held on the second Saturday in May. *Id*. at ¶ 7. However, spring semester grades for graduating students are often not finalized by the date of commencement. *Id*. In 2018, the final exam period for spring semester was May 4-11, 2018, or up to the day before commencement. *Id*. at ¶¶ 5-6. Accordingly, although

commencement is held earlier, the University does not officially confer graduates' degrees until it confirms through its formal auditing and certification process that they have passed their final spring semester courses and otherwise completed all academic and other requirements for their degrees. *Id*. at ¶ 8. In addition to requiring students to fulfill applicable academic requirements, the University requires that any disciplinary charges against a student for which dismissal is a possibility be resolved, and that the student's record be free of active suspension or dismissal sanctions, to confer the student's degree. *Id*.; Student Disciplinary Procedures §§ 2.04(b)(v), (c)(iii).

As of June 4, 2018, Plaintiff's record did not reflect that he had completed the academic requirements for his degree, the University had not confirmed he had completed these requirements, and his degree had not been conferred. Accordingly, pursuant to the Code and Student Disciplinary Procedures, when the University received Roe's complaint on June 4, it placed a disciplinary hold on Plaintiff's record to withhold the conferral of his degree pending the resolution of that complaint and the determination of any sanctions. J. Brown Aff. ¶ 9; Code §1-311(b); Student Disciplinary Procedures §2.04(c)(iii). The University then addressed Roe's complaint pursuant to the Protocol.

On or about June 19, 2018, Plaintiff met with investigators January Boten and Debra Imel for an interview. Compl. ¶ 6. The investigators also conducted interviews of witnesses and reviewed electronic communications between and/or involving Plaintiff and Roe. *Id*. ¶ 7; J. Brown Aff. ¶ 11. Both Plaintiff and Roe had the opportunity to review the evidence gathered by the investigators, provide comments to clarify their own witness statements, and submit follow up question for the investigators to ask the other party. Compl. ¶ 6.

The Investigators prepared a final investigation report, which was submitted to the adjudicating panel. Compl. ¶¶ 8; J. Brown Aff. ¶ 11. The final investigation report for Roe's complaint totaled 284 pages and included summaries of interviews with Plaintiff, Roe, and seven witnesses; extensive electronic and social media communications between Plaintiff and Roe and between Plaintiff or Roe and other individuals; documents from Plaintiff's counselors and Plaintiff's employer; and communications between Plaintiff and Roe's boyfriend. J. Brown Aff. ¶ 11. It also included the parties' written responses to the initial and revised investigation reports, including questions both submitted for the investigators to ask the other party and summaries of additional interviews with Plaintiff and Roe in which they were asked and discussed these questions. *Id.*; *see also* Compl. ¶ 7. Finally, the panel also considered written impact statements submitted by Plaintiff and Roe and character reference letters submitted by Plaintiff. J. Brown Aff. ¶ 12.

On September 27, 2018, the panel determined that Plaintiff did not demonstrate that he had consent for any of the three sexual encounters with Roe that occurred on the night at issue due to Roe's incapacitation due to alcohol, and was accordingly responsible for sexual assault under the Policy. J. Brown Aff. ¶ 13; Compl. ¶¶ 9-10. The panel imposed a sanction of dismissal from the University for two years. J. Brown Aff. ¶ 13; Compl. ¶ 10. On October 4, 2018, Plaintiff appealed the panel's finding and proceeded through the University's appeal process. Compl. ¶ 11. On October 25, 2018, a three-member appellate committee determined that the first hearing was not conducted fairly or in conformity with University procedures because the panel did not explain its rational for the finding of responsibility for the first two instances. . Brown Aff. ¶ 14. The granted Plaintiff's appeal, and remanded the matter for a new determination by a new panel. *Id.*; Compl. ¶ 11.

DocID: 4824-8714-9195.2

1985671.1

On November 12, 2018, a second panel determined, after a complete examination of the information presented, that Roe had been incapacitated and unable to provide consent the third time she had sexual intercourse with Plaintiff.  J. Brown Aff. ¶ 15; Compl. ¶ 12. With regard to the first two instances of sexual intercourse, the second panel noted that Plaintiff and Roe had consumed alcohol throughout the evening at issue; Plaintiff acknowledged Roe became drunk and confirmed that at one point she began to cry and get emotional; afterwards, they engaged in sexual intercourse twice; and Roe stated she was incapacitated during these acts.  J. Brown Aff. ¶ 15. The second panel found, however, that there was insufficient evidence to demonstrate that Plaintiff should have reasonably known that Roe was incapacitated during these two acts. *Id.* It then noted that after the second encounter, Roe finished the alcohol she had and then vomited on herself and on the bed; Plaintiff had told investigators that he was concerned for her, engaged in efforts to comfort her, and assisted in taking her to the bathroom; and two hours later, Plaintiff engaged in sexual activity with Roe. *Id.* at ¶ 16. The second panel found that:

> Given that [Roe] vomited and had to be helped to the bathroom the subcommittee believes that [Roe] was incapacitated during the third sexual encounter and that [Plaintiff] should have reasonably known. Specifically, [Plaintiff] acknowledges concern[] for [Roe's] well-being after she vomited and he should have known at this point [Roe] was not able to provide consent for sexual activity. [Plaintiff] states that the third sexual act happened two hours later and that [Roe] was awake. The subcommittee finds that given the amount alcohol that [Roe] consumed this was insufficient time for her to regain capacity.

*Id.* at ¶ 17; Compl. ¶ 12. The second panel accordingly found that Plaintiff was responsible for sexual assault in violation of Code §1.302.b.1, and imposed the sanction of dismissal. J. Brown Aff. ¶ 18; Compl. ¶ 12.

On November 20, 2018, Plaintiff appealed the second panel's decision and again proceeded through the University's appeal process. J. Brown Aff. ¶ 19; Compl. ¶ 13. On approximately December 10, 2018, the appellate committee reviewed and upheld the second

12

panel's findings and sanction. *Id.* Pursuant to its policies and procedures, the University has withheld conferring Plaintiff's degree based on the determination that he was responsible for sexual assault and his dismissal. J. Brown Aff. ¶ 20. Plaintiff will be permitted to petition for the conferral of his degree in spring 2020. J. Brown Aff. ¶ 20; Compl. ¶¶ 10, 12.

## **ARGUMENT**

Plaintiff's Memorandum requests the extraordinary judicial action of an affirmative injunctive order directing the University to award a degree without addressing in any way the University's rules and governing standards relating to degree conferral, including in situations involving pending disciplinary matters. Plaintiff also seeks such extraordinary relief against the Board of Trustees itself, which is in improper party under well-established sovereign immunity law. As set forth below, there is no legal or factual support for such affirmative injunctive relief, and Plaintiff's requests should be denied.

### I.       **Standard for Preliminary Injunction.**

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Goodman v. Ill. Dept. Fin. & Prof. Reg.*, 430 F.3d 432, 437 (7th Cir. 2005). A plaintiff seeking preliminary injunctive relief must establish by a "clear showing" that: "(1) his case has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm if the injunction is not granted." *Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001). The movant bears the burden of persuasion as to each of these factors. If the movant fails to meet just one of the requirements, the injunction must be denied. *Cox v. City of Chicago*, 868 F.2d 217, 223 (7th Cir. 1989).

DocID: 4824-8714-9195.2

"Once a moving party has met its burden of establishing the threshold requirements for a preliminary injunction, the court must balance the harms faced by both parties and the public as a whole." *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1054 (7th Cir. 2017). This analysis uses a "sliding scale" that measures the relative harms against the moving party's likelihood of success on the merits. *Id.* "The more likely [a plaintiff] is to succeed on the merits, the less the scale must tip in his favor. … The converse, however, also is true: the less likely he is to win, the more the balance of harms must weigh in his favor for an injunction to issue." *Id.*

"[O]rdinarily the function of a preliminary injunction is to preserve the status quo pending final determination of the merits" of a case. *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978). Mandatory injunctions that seek to alter rather than maintain the status quo, as Plaintiff seeks here, are accordingly "cautiously viewed and sparingly used." *Id.* (reversing district court's grant of affirmative injunction requiring jail to construct visitation facilities where record did not contain "the necessary definitive support to justify the granting of [such] relief"). Thus, "mandatory preliminary injunctions have been held to be improper where the purpose of the relief sought was to effect the very change in the parties' relationship that was the objective of the lawsuit itself, i.e., to 'place one party in a new position which it is seeking to make permanent through the litigation.'" *Ohio-Sealy Mattress Mfg. Co. v. Duncan*, 548 F. Supp. 75, 77 (N.D. Ill. 1982).

## II.    The Eleventh Amendment Bars Plaintiff's Request for Injunctive Relief Under 42 U.S.C. § 1983.

As an initial matter, Plaintiff's request for mandatory injunctive relief under 42 U.S.C. § 1983 based on the University's alleged violation of his due process rights must be denied as barred by the Eleventh Amendment.

The Eleventh Amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities. *Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012). There are three exceptions to the state's sovereign immunity under the Eleventh Amendment: (1) a state can consent to a suit; (2) Congress can abrogate a state's immunity; and (3) the doctrine established by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), which "allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014) (quoting *Council 31 of AFSCME*, 680 F.3d at 882) (emphasis added).

As this Court recently held, while the *Ex parte Young* doctrine allows suits under § 1983 against individual state officers in their official capacities for prospective injunctive relief, it does not permit those claims to be brought against the Board of Trustees as an entity. *Minik v. Bd. of Trustees of Univ. of Illinois*, No. 18-cv-2101, slip op. at 23-24 (C.D. Ill. Feb. 25, 2019)[6]. *See also Cannon v. Univ. of Health Sciences/Chi. Med. Sch.*, 710 F.2d 351, 356 (7th Cir. 1983); *Kaimowitz v. Bd. of Tr. of the Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991).

Additionally, § 1983 "only permits an individual to sue a 'person' who deprives that individual of his or her federally-guaranteed rights under color of state law." *Minik*, slip op.  at 24 n.8 (quoting *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014)). The Board of Trustees cannot be sued under § 1983 because it is not a "person" within the meaning of § 1983. *Id.*

Accordingly, because the University has not waived its Eleventh Amendment immunity from suit in federal court under § 1983 and Plaintiff does not request relief from any individual defendant, and because Plaintiff may not sue the Board of Trustees under § 1983, Plaintiff's due

---

[6] A copy of this Order is attached as Exhibit 3.

process claims cannot prevail and his request for injunctive relief based on his due process claims must be denied.

### III.    Plaintiff Has Not Established the Basic Elements for Entry of a Preliminary Injunction

Plaintiff cannot satisfy any of the elements required to obtain the drastic injunctive relief he seeks: a judicial directive that the University grant Plaintiff a degree, in contravention of the University's policies regarding degree conferral which specifically provide that the University will withhold degrees where disciplinary charges for which dismissal is a possibility are made prior to the final conferral of the degree and while a student is dismissed from the University based on a finding of a conduct violation. His request invites this Court to ignore those degree-conferral standards, which counsels against the remedy sought.

The lack of any support for the relief Plaintiff seeks is magnified by his delay in requesting it nine months after the disciplinary hold was first placed on his record and nearly three months after the sanction was affirmed after his second appeal.  As a result, Plaintiff now seeks mandatory injunctive relief designed to change the status quo that has existed since June 2018, and more specifically, to effect the very change that is the objective of his lawsuit by obtaining a judicial order compelling the University confer his degree. This requested mandatory relief is improper. *Ohio-Sealy Mattress*, 548 F. Supp. at 77. As explained below, no Due Process, contract, or gender bias concerns are implicated by the University's adherence to its degree-conferral and sexual misconduct disciplinary procedures as a matter of law and fact, and Plaintiff's motion must be denied.

DocID: 4824-8714-9195.2

1985671.1

A.   **Plaintiff Does Not Have a Reasonable Likelihood of Success on the Merits of his Due Process Claims**

Plaintiff's claims for injunctive relief against the University fail at the outset for the reason set forth in Section II, above. In addition, Plaintiff's claim that the University violated his due process rights lacks sufficient likelihood of succeeding on its merits.

To state a procedural due process claim, Plaintiff must establish that he had a cognizable property or liberty interest under the Fourteenth Amendment; that the University deprived him of that interest; and that the deprivation was without due process. *See Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 831 (7th Cir. 2012); *O'Gorman v. City of Chicago*, 777 F.3d 885, 891 (7th Cir. 2015). Plaintiff's due process claims are not likely to succeed because he has not sufficiently established any of these elements.

As an initial matter, Plaintiff has not identified a cognizable property or liberty interest that the University removed. Plaintiff asserts that he has a protected property interest in his MBA degree from the University and in his employment and immigration status. Mem. p. 5. These interests either are unrelated to Plaintiff's relationship with the University or are not protected by the Fourteenth Amendment. Further, the University did not deprive Plaintiff of these asserted property interests without due process.

1.   **Plaintiff fails to identify a contractual promise that his degree would be granted upon completion of his coursework.**

Plaintiff acknowledges that the Seventh Circuit has repeatedly rejected the proposition that an individual has a stand-alone property interest to an education at a state university. Mem. p. 5; *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 772–73 (7th Cir. 2013). Rather, as Plaintiff acknowledges, to establish such a property interest a plaintiff must show that a contract existed between himself and the university that entitled him to a specific

DocID: 4824-8714-9195.2

right, and must identify a specific contractual promise or term that the university failed to honor. *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009); *Marmachi v. Bd. of Trs. of Univ. of Illinois*, 715 F. App'x 529, 533 (7th Cir. Nov. 7, 2017). Absent evidence of such a specific promise, the court will not participate in second-guessing the university's professional judgment. *See Bissessur*, 581 F.3d at 602.

Here, Plaintiff says he has a property interest in his MBA degree but fails to identify a specific contractual entitlement to receive that degree. *Bissessur*, 581 F.3d at 602. Plaintiff argues that the mere fact that he completed the coursework for his degree before and participated in the University's graduation ceremony on May 12, 2018 means that his degree was conferred before the allegations of sexual assault were raised. But Plaintiff does not identify any specific contractual language that entitled him to his degree upon completing his coursework. Indeed, Plaintiff even alleges that promises relating to his degree were "conditional" without identifying the source of such promises.  Compl. ¶ 5.  But the only "promises" Plaintiff points to in his Memorandum are the general statements from the Code that provide that:

- Students "have at least the rights and responsibilities common to all citizens," and "affiliation with the University as a student does not diminish the rights or responsibilities held by a student . . . as a citizen of larger communities of the state, the nation, and the world." Mem. p. 6; Compl. ¶ 106 & Ex. A at §1-101(a).

- Shared values of the University community include the "freedom to learn" and the "following enumeration of rights [in the Code] shall not be construed to deny or disparage other rights retained by [community members] in their capacity as members of the campus community or as citizens of the community at large."  Mem. p. 6; Compl. ¶ 106 & Ex. A at §1-101(b).

DocID: 4824-8714-9195.2

1985671.1

Mem. p. 6. These Code provisions do not relate to the process of conferring degrees, let alone create a specific entitlement to receive a degree upon completing the required coursework.[7]

Courts have addressed this scenario and recognized that completion of academic requirements does not obligate the conferring of a degree:

> It cannot be that a student having passed all examinations necessary for a degree can, before his graduation, excite disturbance and threaten injury to the school or college without being amendable to some punishment. No course would seem open except to forthwith expel him or refuse his degree. . . . The faculties of educational institutions having power to confer degrees . . . are necessarily vested with a broad discretion as to the persons who shall receive those honors. . . . Any other rule would be subversive of all discipline in the schools. . . . We see no reason why the right to discipline is not as great between the final examination and the graduation as before . . . .

*Dinu v. Pres. & Fellows of Harvard Coll.*, 56 F. Supp. 2d 129, 133 (D. Mass. 1999) (quoting *People ex rel. O'Sullivan v. New York Law Sch.*, 68 Hun 118, 22 N.Y.S. 663, 665 (N.Y. Sup. Ct. 1893). *See also Harwood v. Johns Hopkins Univ.*, 130 Md. App. 476, 485 (2000).

Plaintiff's Complaint and Memorandum ignore University policies that actually do pertain to the circumstances here. First, the University's polices clearly inform all students that the University will take disciplinary action for conduct that is found to violate its rules regarding student conduct, including the Policy. For example, the Code states:

- [T]he University may take disciplinary action for incidents that violate the University's rules of conduct even though such conduct is not prosecuted in the courts. All members of the University community are expected to observe high standards of integrity and ethical behavior. Code §1-301(b).

---

[7] This language was relied on by in *Doe v. Bd. of Trs. of the Univ. of Illinois,* No. 2:17-cv-2180 ("Doe I"), in which conferral of a degree was not at issue, but rather the plaintiff was requesting a new procedure, and specifically a live hearing. Here, Plaintiff's current Motion is not requesting that remedy, but seeks conferral of his degree by April 1, 2019. If Plaintiff was seeking a new hearing based on these alleged "promises," a new hearing would be a remedy the Court could consider; even if granted however, it is not feasible to conduct such a hearing by the April 1, 2019 deadline upon which this Motion is based. The University reserves the right to present further argument regarding whether this language creates a property interest when or if a new procedure is at issue.

DocID: 4824-8714-9195.2

- The University will take disciplinary action for conduct violating §§ 1-302 to 1-311 below [where § 1-302 is the "Rules of Conduct," which incorporates violations of the Policy, see § 1-302(b)]. Code §1-301(h).

- Students enrolling in the University assume an obligation to conduct themselves in a manner compatible with the University's function as an educational institution and suitable to members of the academic community. Conduct for which students are subject to discipline includes, but is not limited to, the following: . . . (b) Conduct that violates the University's sexual misconduct policy, including [sexual assault]. Code §§ 1-302, 1-302(b).

Indeed, the Code specifically informs students that disciplinary action may occur after a student graduates. Code §1-301(c)(2) ("Individuals subject to student discipline include but [are] not limited to all persons . . . who cancel, withdraw, or graduate after committing behavior which may violate the code.")

In addition, as set forth above, the University's policies specifically address the very situation here, where a disciplinary matter arises before final conferral of the degree. In such circumstances, as Plaintiff alleges, the University's policies provide for "conditional" degree rights that are contingent on the status of disciplinary proceedings as follows:

- The Senate Committee on Student Discipline has the right to withhold privileges of the academic community, including the conferral of the degree itself, at any point prior to the conferral of the degree. In instances in which dismissal is a possibility for disciplinary infractions, the conferral of the degree is withheld until the disciplinary action has been resolved. Code §1-311(b).

- While dismissed, a student may not enroll in, or attend, any courses at the university and may not be awarded a degree from the university. Student Disciplinary Procedures §2.04(b)(v).

- The Senate Committee, appropriate subcommittee, or the Executive Director may withhold the conferral of the degree until the disciplinary action has been resolved. Student Disciplinary Procedures §2.04(c)(iii).

Further, although Plaintiff participated in commencement on May 12, 2018, one grade from his spring semester had not been posted and his transcript was incomplete at that time.

20

Plaintiff cannot logically argue that the University makes an implied promise to students that it will officially confer their degrees before it is able to confirm that they have passed – not merely completed – spring semester courses. *See, e.g.*, *Easley v. Univ. of Mich. Bd. of Regents*, 627 F. Supp. 580, 586 (E.D. Mich. 1986) (noting that degrees could not have been conferred as of the day after final exams as there was "no time to determine semester grades"). Indeed, a finding of such an implied promise would require the University to grant a student a degree even where it learns after the graduation ceremony that he or she *failed* required spring semester courses. This position makes no sense, and Plaintiff points to no contractual language that would support it.

Therefore, Plaintiff had no contractual entitlement to his degree just because he finished his coursework. Instead, the evidence and Plaintiff's own allegations confirm that the University adhered to its policies that render a student's right to a degree "conditional" on being in good standing when all grades and other information become known and, when disciplinary matters arise before that time as they did for Plaintiff, required it to withhold final conferral of his degree. Compl. ¶ 5; Mem. p. 6 (acknowledging that any right to a degree would be affected "had plaintiff failed to uphold his end of the bargain (e.g. paying tuition or otherwise remain in good standing)"). Plaintiff thus fails to establish a property interest in his degree.

### 2. Plaintiff fails to establish a protected liberty interest in his employment or desired immigration status.

In addition, Plaintiff has failed to establish a cognizable liberty interest. It appears he seeks to assert such an interest in his "good name, reputation, honor or integrity." Mem. p. 4. However, the Seventh Circuit has held that an individual does not, as a general matter, have a cognizable liberty interest in his reputation. *O'Gorman*, 777 F.3d at 891. Damage to an individual's good name or reputation may implicate due process rights only when such "stigmatic" harm takes "concrete forms and extend[s] beyond mere reputational interests."

DocID: 4824-8714-9195.2

*Omosegbon v. Wells*, 335 F.3d 668, 675 (7th Cir. 2003) (citing *Paul v. Davis,* 424 U.S. 693, 711–12 (1976)) (internal quotation marks and citation omitted); *see also O'Gorman*, 777 F.3d at 891. In other words, reputation alone, apart from some more tangible interests such as employment, is not either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause. *Paul*, 424 U.S. at 701.

Plaintiff also attempts to assert a liberty interest in his "employment and immigration status." Mem. p. 5. But Plaintiff is employed by a third party, not the University, and he anticipates that this employer, not the University, may sponsor him for a visa. *See id*. at pp. 1-2. The entity that Plaintiff fears will deprive him of his "employment and immigration status" is this third party, not the University. *See id*. Plaintiff cites no legal authority for the argument that he can assert a due process claim against the University based on anticipated deprivation of his alleged liberty interests by a third party. Instead, he cites *Kahn v. Bland,* 630 F. 3d 519, 535 (7th Cir. 2010).  Mem. p. 5.  This Court has specifically addressed the meaning of *Kahn*, by focusing on what is known as the "stigma plus" test, where employment is lost because of the "stigma" or reputational damage from government action that is disclosed publicly. *Doe v. Bd. of Trs. of the Univ. of Illinois,* No. 2:17-cv-2180 ("Doe I"), slip op. at 18 (C.D. Ill. July 24, 2018) (*citing Kahn,* 630 F. 3d at 535 and *Schepers v. Comm'r, Ind. Dep't of Corr.,* 691 F. 3d 909, 914 (7th Cir. 2012)).[8] To assert such an interest, a plaintiff must allege "(1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." *Id.* at 18-19. Plaintiff does not predict lost employment and immigration status from disclosure of any stigmatizing information but from the absence of a degree.

---

[8] A copy of this Order is attached as Exhibit 4.

22

1985671.1

In sum, Plaintiff has not identified a tangible interest aside from his reputation that he claims was infringed *by the University*, and he cannot maintain a due process claim based solely on stigmatic harm. *See Park*, 781 F. Supp. 2d 783, 789 (S.D. Ind. 2011). Plaintiff has accordingly failed to allege a cognizable liberty interest.

### 3. The University did not deprive Plaintiff of his alleged property or liberty interests without due process.

First, even assuming that Plaintiff had a cognizable property or liberty interest in his employment or his desired immigration status, the University is not Plaintiff's employer and is not responsible for applying for an H1-B visa on his behalf. The University accordingly has not "deprived" Plaintiff of these alleged interests and is not the entity that Plaintiff fears will deprive him of these interests.

The University has also not deprived Plaintiff of his degree without due process. As discussed above, the University followed its clear and established policies in placing a hold on Plaintiff's record upon receipt of the sexual assault complaint against him and in subsequently withholding conferral of a degree based on the finding that he was responsible for sexual assault in violation of its Policy and Code.[9]

### B. Plaintiff Does Not Have a Reasonable Likelihood of Success on the Merits of his Title IX Claim

Plaintiff's Title IX gender discrimination claim is based on an "erroneous outcome" theory. *See* Compl. ¶¶ 152, 155; Mem. pp. 8-9. To state an erroneous outcome claim, a plaintiff must "allege particular facts sufficient to cast doubt on the accuracy of the outcome of the

---

[9] Although not argued within this response brief, the University does not waive and reserves the right to contest at other stages of this litigation the extent to which the policies and procedures applied to Plaintiff's internal disciplinary proceedings fully complied with the Protocol in effect at the time of those proceedings and provided Plaintiff with all process required by law. *See Goss v. Lopez*, 419 U.S. 565, 581 (1975) (requiring notice and "an explanation of the evidence the authorities have and an opportunity to present [his] side of the story").

proceedings and then also allege particular circumstances suggesting gender bias was a motivating factor behind erroneous finding." *Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 774 (N.D. Ind. 2017). Allegations of "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding … might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783, 792-93 (N.D. Ill. 2015). Plaintiff's allegations fail to meet these pleading requirements.

First, Plaintiff fails to allege any facts to support a plausible inference that the outcome of his case was erroneous. Indeed, the evidence and Plaintiff's own allegations demonstrate the opposite. They show that the University afforded Plaintiff extensive process under its procedures including consideration by two separate adjudicating panels and two appeals, and that its investigation into Roe's complaint was thorough and extensive. Plaintiff alleges no facts to support his conclusion that the determination reached by the second panel and upheld by the appellate committee was erroneous. Plaintiff does not, for instance, argue that the panel or appellate committee completely ignored critical evidence that would have led to a different outcome or that he was prohibited from presenting such evidence.

Further, Plaintiff has failed to plead facts to create a plausible inference that gender bias caused the alleged erroneous outcome. *See Purdue*, 281 F. Supp. 3d at 775; *Ludlow*, 125 F. Supp. 3d at 792. In support of his claim of gender bias, Plaintiff alleges generally that the University was pressured by the Department of Education to comply with its prior guidance regarding sexual misconduct proceedings, that the University was "further pressured to make an example out of male students … due to increased negative media attention;" that the University's

DocID: 4824-8714-9195.2

training materials were biased; and that male students are "presumed guilty" or "presumed to have engaged in sexual misconduct in situations where both students have consumed alcohol." Compl. ¶¶130-131, 133, 153-54, 156.

These vague and conclusory allegations of a general bias on the part of the University are insufficient to support an inference that gender bias was a motivating factor behind the alleged erroneous finding in Plaintiff's case. *See Doe v. Columbia Coll. Chicago*, 299 F. Supp. 3d 939, 955 (N.D. Ill. 2017); *Blank v. Knox Coll.*, No. 14-cv-1386, 2015 WL 328602, at *2-4 (C.D. Ill. Jan. 26, 2015); *Ludlow*, 79 F. Supp. 3d at 835-36. In other words, Plaintiff's Complaint fails to satisfy the fundamental requirement of any Title IX discrimination claim: alleged mistreatment on the basis of sex in connection with an education program. *See Columbia Coll.*, 299 F. Supp. 3d at 950-51. This deficiency is fatal to Plaintiff's Title IX erroneous outcome claim.

### C. Plaintiff Does Not Have a Reasonable Likelihood of Success on the Merits of his Breach of Contract Claim.

To state a breach of contract claim, Plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) his performance of the contract; (3) breach by the University; and (4) a resulting injury. *See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). Plaintiff alleges that the University breached alleged promises by "not conferring his degree and by failing to follow the University's written policies and procedures." Compl. ¶ 160. With respect to degree-conferral promises, however, the Complaint and Memorandum lack any reference to clear provisions of the Code, and the Complaint asserts only that such promises are "conditional." Compl. ¶ 5.  That general statement is correct, as the provisions of the Code clarify. *See* Section III.A.1. The University followed those promises in withholding Plaintiff's degree, which precludes any potential success on the core aspect of Plaintiff's breach of contract claim addressing his degree.

DocID: 4824-8714-9195.2

1985671.1

Instead of addressing those promises, Plaintiff's allegations refer to the following procedures:

- The Code, Policy, and Student Disciplinary procedures "provide that students will not be dismissed from the University without following its specified procedures;"

- The Policy "further provided that students' due process rights would not be denied or diminished;"

- The University "deprived Plaintiff of the opportunity to have any kind of hearing;"

- Instead, the University "selected two investigators to investigate the allegations and to collect evidence. The investigators interviewed Plaintiff … and permitted him to provide additional explanations, questions, and evidence in writing."

- The University "did not permit Plaintiff to attend his hearing on the charges."  Compl. ¶ 160.

Plaintiff's breach of contract claim based upon these cited procedures fails because Plaintiff has not identified any specific and definite contractual promise by the University about its process that the University breached, as Illinois law requires. *Abrams v. Ill. Coll. of Podiatric Med.*, 395 N.E.2d 1061, 1065 (Ill. App. Ct. 1979). To the contrary, Plaintiff's own allegations demonstrate the opposite – that University followed its procedures with regard to the resolution of Roe's complaint and with regard to the conferral, and withholding, of degrees under the circumstances of this case. As discussed in Section III.A.1, Plaintiff has not identified any enforceable contractual promise that the University would confer his degree upon his completion of his coursework.

In addition, Plaintiff's breach of contract claim is fatally defective because Plaintiff does not present facts, argument, or authority sufficient to support the conclusion that either the University's decision to withhold his degree or any decision related to the resolution of Roe's complaint was made "arbitrarily, capriciously, and in bad faith" as required under Illinois law.

26

*See Frederick v. Nw. Univ. Dental Sch.*, 617 N.E. 2d 382, 387 (Ill. App. Ct. 1993); *DiPerna v. Chicago Sch. of Prof'l Psychology*, 893 F.3d 1001, 1007 (7th Cir. 2018). Courts have adopted the deferential arbitrary and capricious standard because they are reluctant to interfere with academic affairs and regulation of student conduct. *DiPerna*, 893 F.3d at 1007 (quoting *Raethz v. Aurora Univ.*, 805 N.E. 2d 696, 699 (Ill. App. Ct. 2004)). Rather, to warrant judicial review, a university's decision must be completely irrational, to such an extreme that the university arguably "did not actually exercise professional judgment." *DiPerna,* 893 F.3d at 1007 (quoting *Raethz*, 805 N.E. 2d at 699); *see also Doe v. Univ. of Chicago*, No. 16 C 08298, 2017 WL 4163960, at *8 (N.D. Ill. Sept. 20, 2017) ("[A]part from anything else, the University is entitled to exercise discretion in the discipline of its students without being second-guessed by federal courts, so long as its exercise of discretion is not "clearly" unreasonable.").

Analyzed against this standard, Plaintiff's breach of contract claim is wholly insufficient. The essence of Plaintiff's claim is that he disagrees with the outcome of the proceeding on Roe's complaint and the University's decision to withhold his degree. Plaintiff's disagreement, however, does not provide a basis for this Court to review the University's decisions in this matter, which require only a "rational basis." Plaintiff's own allegations demonstrate this rational basis. He was found responsible for sexual assault following an extensive process during which he had ample opportunity to present testimony and evidence supporting his position, and once Roe's complaint was made, the University followed its policies that required it to withhold Plaintiff's degree, first pending resolution of the complaint and currently due to his disciplinary sanction. The Complaint provides no basis under established Illinois law for this Court to review the University's decisions in this matter, and Plaintiff's breach of contract claim will fail.

DocID: 4824-8714-9195.2

D.      **Plaintiff Cannot Establish Irreparable Harm.**

Plaintiff asserts that if this Court does not issue an order directing the University to confer his degree, he will suffer irreparable harm because his current employment will be terminated, his current employer will not complete an application to sponsor him for an H-1B visa, and his potential inability to remain in the United States would prohibit him from continuing with this litigation. Mem. pp. 9-10.   But the Complaint's allegations aver less certainty than the Memorandum, stating that, without a degree by April 1, Plaintiff's "chances of remaining employed in current job and his chances to remain in the United States" will be "drastically reduced" that he will "likely be ineligible for the necessary visa." Compl. ¶¶62, 142.

Plaintiff cannot show irreparable harm. As an initial matter, as many courts have noted, a suspension or dismissal does not *per se* constitute irreparable harm capable of providing the basis for entry of mandatory injunctive relief. *See Preston v. Chicago State*, 120 F. Supp. 3d 801, 806 (N.D. Ill. 2015) (no irreparable harm where expelled student did not timely move for a preliminary injunction, had continued his education at another institution, and provided "no authority that a student's ambitions in a particular future employment path warrant the entry of a mandatory interlocutory injunction").

In addition, Plaintiff's uncertainty about whether he will suffer any inability to remain in the United States makes sense because a masters' degree is not a requirement to seek an H-1B visa and the absence of an MBA is not an automatic bar to Plaintiff's interest in continuing immigration status. Plaintiff's current employer could seek an H-1B visa for him without the MBA degree, and nothing in the Complaint or Memorandum indicates that the employer has decided otherwise. The lack of an MBA degree has also not prohibited Plaintiff from seeking or obtaining another job or applying for and obtaining an H1-B visa through means other than his

current employer, which he has known he may need to do without an MBA for many months.  In other words, the risk of lost immigration status stems from Plaintiff's decisions and perhaps those of his current employer, not the fact that his degree has been withheld since June 2018. Indeed, Plaintiff's claim that he will suffer irreparable harm if his current employer terminates him and does not sponsor him for an H-1B visa is undermined by Plaintiff's own delay in seeking injunctive relief until a few weeks before the H-1B filing deadline when his options for seeking another employer sponsor are harder to find.

In his Complaint, Plaintiff also asserts irreparable harm may take the form of having to explain a gap in his education or gap in his employment. Compl. ¶ 142. This Court has squarely rejected the "gap in education" issue as irreparable harm, and other courts have also been reluctant to enter injunctions to avoid claimed irreparable harm in the form of anticipated lost employment. *Doe I,* slip op. at 4 (Dec. 18, 2017)[10]; *Bedrossian v. Nw. Mem'l Hosp.,* 409 F.3d 840, 845 (7th Cir. 2005). Even an "inability to find another job . . . is not an irreparable harm," and nor is any reputational loss stemming from such lost employment. *Bedrossian,* 409 F.3d at 845-46 ("[H]umiliation, damage to reputation, and loss of income [do not] rise to the level of an extraordinary termination of employment situation" needed to constitute irreparable harm).

Finally, it is significant that the University's ultimate determination that Plaintiff was responsible for sexual assault and sanctioning decision was reached after an extensive investigation and a fair proceeding, involving two appeals. The nearly 300 page investigation report involved lengthy interviews with both Plaintiff and Roe, interviews with seven witnesses, and extensive electronic communications between Plaintiff and Roe. Plaintiff cites no authority, and does not argue, that where a University's finding that a student is responsible for sexual

---

[10] A copy of this Order is attached as Exhibit 5.

assault is supported with ample evidence and reached pursuant to a fair process, without any procedural flaws or mistakes, the regular and legitimate disciplinary consequences for that student constitute irreparable harm justifying the extraordinary remedy of a mandatory preliminary injunction awarding a degree.

### E.   The Balance of Harms Strongly Favors the University and the Public

Finally, even if this Court were to find that Plaintiff's suspension constituted irreparable harm, Plaintiff is not entitled to injunctive relief that he seeks (conferral of a degree) because the balance of harms favors the University and the interests of the public. Plaintiff's request for judicial intervention to interfere with the University's degree-conferral standards would harm the University's interest and contravene significant public interest in the effectiveness and autonomy of the University. Courts must balance such equitable considerations when considering the drastic remedy of a mandatory preliminary injunction, rendered under time pressures and without a full evidentiary record, and these factors weigh heavily in the University's favor and against Plaintiff's requested relief. *See Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1440 (7th Cir. 1986). The balance tips more in favor of the University given the uncertainty of whether Plaintiff will suffer any loss of immigration status.

Courts respect the autonomy of higher educational institutions, particularly with respect to academic matters. It is well settled that "[t]here is no judicial review of academic decisions." *Harris v. Adler Sch. of Prof'l Psychology*, 309 Ill. App. 3d 856, 859 (1st Dist. 1999); *see also Bilut v. Northwestern Univ.*, 269 Ill. App. 3d 125, 134 (1st Dist. 1994) ("[O]ur court is ill equipped to run private colleges and universities"). Setting the conditions and policies upon which degrees will be conferred is a quintessential academic decision, and Plaintiff's request for a mandatory injunction asks this Court to essentially alter the University's degree conferral

DocID: 4824-8714-9195.2

policy. In the process, he asks this Court to value his potential loss of employment and immigration status created in part by his own timing decisions over the University's right to control its own degree-granting policies. The balance of harms on these issues strongly favors the University.

Thus, in addition to the lack of any irreparable harm at issue here, the balance of harms that preliminary injunctive relief would cause to the University and applicable public interests require denial of Plaintiff's request.

## CONCLUSION

Binding authority prohibits the injunctive relief that Plaintiff seeks, and strongly indicates that Plaintiff is not likely to prevail on any substantive legal claim he seeks to allege. For the reasons stated and authorities cited above, the University requests that this Court therefore deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted,

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ILLINOIS,

By:____ */s/*Peter G. Land_____
         One of Its Attorneys

Peter G. Land
Peter.Land@huschblackwell.com
Gwendolyn Morales
Gwendolyn.Morales@huschblackwell.com
Husch Blackwell LLP
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
312.526.1631

31

1985671.1

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that he caused a copy of the foregoing

**DEFENDANT BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS'**

**MOTION FOR LEAVE TO FILE MEMORANDUM IN OPPOSITION TO PLAINTIFF'S**

**MOTION FOR EMERGENCY TEMPORARY PROTECTION ORDER AND/OR**

**PRELIMINARY INJUNCTION IN EXCESS OF 15 PAGES** to be filed with the Clerk of the

Court using the CM/ECF system, which will send electronic notification to the following counsel

of record this 21st day of March, 2019:

> Eric F. Long
> Friedman & Nemecek, LLC
> 1360 E. 9th St., Suit 650
> Cleveland, Ohio 44114
> (216) 928-7700
> efl@fanlegal.com

/s/ Peter G. Land

DocID: 4824-8714-9195.2