UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 19-CV-2054 |
| | ) |
| BOARD OF TRUSTEES OF THE | ) |
| UNIVERSITY OF ILLINOIS, | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

This case is before the court for a ruling on Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order (#4). Plaintiff's Complaint (#1), which he incorporates into his Motion (#4), includes a number of attachments which the court has considered. Defendant filed a Memorandum in Opposition (#11) which also includes a number of attachments, which the court has considered. The parties appeared by telephone at a hearing held Thursday, March 28, 2019, at 10:30 a.m., and each party provided argument and responded to questions posed by the court. The matter being fully briefed, and each party being heard, the court took the matter under advisement, and now rules as follows.

A. <u>Findings of Fact</u>

The court has reviewed the documentary evidence provided by the parties. Neither party submitted, or requested to submit, additional evidence beyond the documents attached to their filings. The court finds these facts for purposes of this order only, based on the evidence before it at this early point in the case. These findings are without prejudice to any future finding as the factual record is more fully developed.

The incident that ultimately gave rise to discipline proceedings against Plaintiff took place on October 6, 2017. The Alleged Victim and Plaintiff consumed alcohol (specifically vodka and orange juice) together. Plaintiff acknowledged to University of Illinois at Urbana Champaign ("University") investigators that the Alleged Victim became drunk and confirmed that at one point she began to cry and get emotional. Besides the obvious fact that voluntary intoxication is not a defense to sexual assault, there is no indication that Plaintiff at any point was intoxicated to a point anywhere nearing incapacity himself. Plaintiff and Defendant engaged in two instances of sexual intercourse that the first hearing panel deemed nonconsensual, but the second hearing panel did not deem nonconsensual. The facts alleged regarding a third instance of sexual intercourse, that was ultimately deemed to violate the University's Student Code ("Code"), show that the Alleged Victim consumed an additional quantity of alcohol, vomited, fell asleep, regained consciousness, and thereafter Plaintiff, knowing these facts, engaged in sexual intercourse with her.

The University maintains and enforces rules relating to its students, their academic requirements, and disciplinary matters through the Code, Student Disciplinary Procedures, and the regulations of the Board of Trustees for the guidance of the staff of the University ("Statutes").

The court assumes for purposes of this order, based on the information before it at this early stage, that Plaintiff and Defendant had a contractual relationship. The terms of that contract included the University Code and Statutes. The court also assumes, again only for the purposes of this order, that the terms of that contract provided that Plaintiff would be afforded due process in any disciplinary proceedings held against him.

The University utilized, at times relevant, what is commonly referred to as the "Investigative Model" for adjudicating disciplinary claims of sexual misconduct. Two investigators are assigned to interview the Alleged Victim and the Respondent alleged to have violated the Code (here, Plaintiff), obtain witness statements, and collect documentary evidence. The investigators prepare a written report, which is relied upon by a Hearing Panel to determine whether the Respondent has violated University policies and, if so, what sanction is appropriate. At the relevant time, the University did not hold a hearing where the accused was allowed to appear and be heard by the Hearing Panel.

The University Statutes establish that a degree cannot be conferred upon a student until all the student's grades have been certified. The Statutes also establish that

3

if a disciplinary case is opened against a student before all grades are certified a disciplinary hold is placed against the student's account until the disciplinary proceedings are resolved, and possibly longer depending on whether a sanction is imposed. Such a hold prevents a degree from being conferred.

Plaintiff was a second-year graduate MBA student at the University during the 2017-2018 school year. On June 4, 2018, after Plaintiff had completed his classwork for his degree but before all of his grades were known and before the University had certified that he had fulfilled the requirements of his degree, Plaintiff was accused of sexual assault. Pursuant to its policies, the University placed a hold on Plaintiff's record, which resulted in the withholding of his degree pending the resolution of the complaint. Plaintiff was notified of the hold on June 4, 2018.

On September 27, 2018, pursuant to the University's procedure in effect at the time for resolving sexual misconduct complaints (which has now changed), an adjudicating panel found Plaintiff responsible for sexual assault and dismissed him from the University. Plaintiff appealed, his appeal was granted, and the matter was remanded for consideration by a new adjudicating panel. On November 13, 2018, a second panel, composed of different members, made a more specific finding that the Alleged Victim, Jane Roe ("Roe"), was incapacitated and unable to consent to the third act of sexual intercourse between Plaintiff and Roe that occurred that night (as evidenced by the fact that Roe had vomited as a result of alcohol consumption in Plaintiff's presence before the third sexual encounter), and Plaintiff had accordingly

violated the University's sexual misconduct policy. Based on this finding, the second panel imposed a sanction of dismissal, which as applied to Plaintiff meant the withholding of his degree during the period of dismissal. Plaintiff appealed the determinations of the second panel, and on December 10, 2018, the University affirmed its findings and sanctions.

Plaintiff was denied an opportunity to appear before the Hearing Panel, testify on his own behalf, cross-examine adverse witnesses, or present oral testimony from his own witnesses.

Plaintiff has been advised by his employer that his employment will be terminated on April 15, 2019, should he not obtain his degree by then, and that the deadline for his visa sponsorship is April 1, 2019. Plaintiff, an Indian citizen, is currently lawfully in the United States pursuant to his Post-completion Optional Practical Training visa, that will expire on or about July 2, 2019.

B. <u>Preliminary Injunction/Temporary Restraining Order Legal Standard</u>

Like all forms of injunctive relief, a temporary restraining order is "an extraordinary remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). The Seventh Circuit has articulated the standard applicable to the case at bar as:

> To obtain a preliminary injunction, the moving party must show "1) a reasonable likelihood of success on the merits, and 2) no adequate remedy at law and irreparable harm if preliminary relief is denied." *Mil–Mar Shoe Co., Inc. v. Shonac*

5

*Corp.*, 75 F.3d 1153, 1156 (7th Cir. 1996); see also *TMT North America, Inc. v. Magic Touch GmbH*, 124 F.3d 876, 877 (7th Cir. 1997); *Grossbaum v. Indianapolis–Marion County Bldg. Auth.*, 100 F.3d 1287, 1291 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 [] (1997); *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1453 (7th Cir. 1995); *Abbott Lab. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the movants satisfy this initial burden, the court must balance the irreparable harm to the non-moving party if the injunction is granted against the irreparable harm to the moving party if the injunction is denied. See *Grossbaum*, 100 F.3d at 1291; *Publications Int'l, Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996); *Abbott Lab.*, 971 F.2d at 11. The court must also consider the effect of the injunction on nonparties. See *TMT North America*, 124 F.3d 876, 877; *Grossbaum*, 100 F.3d at 1291–92; *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1067 (7th Cir. 1994).

The [plaintiffs] seek a mandatory preliminary injunction, that is, an injunction requiring an affirmative act by the defendant …. Because a mandatory injunction requires the court to command the defendant to take a particular action, "mandatory preliminary writs are ordinarily cautiously viewed and sparingly issued." *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978); see also *W.A. Mack, Inc. v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958) (finding that "mandatory injunctions are rarely issued and interlocutory mandatory injunctions are even more rarely issued, and neither except upon the clearest equitable grounds").

*Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997).

In this circuit, the standards for a TRO and a preliminary injunction are functionally identical. *Crue v. Aiken*, 137 F. Supp. 2d 1076, 1082–83 (C.D. Ill. 2001).

    1. *Likelihood of Success on the Merits*

        a. Section 1983 Due Process Claim

Plaintiff sued only the Board of Trustees of the University of Illinois. The Eleventh Amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities. *Council 31 of AFSCME v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012). There are three exceptions to the state's sovereign immunity under the Eleventh Amendment: (1) a state can consent to a suit; (2) Congress can

abrogate a state's immunity; and (3) the doctrine established by the Supreme Court in *Ex parte Young*, 209 U.S. 123 (1908), which "allows private parties to sue *individual state officials* for prospective relief to enjoin ongoing violations of federal law." *Mutter v. Madigan*, 17 F. Supp. 3d 752, 757 (N.D. Ill. 2014) (quoting *Council 31 of AFSCME*, 680 F.3d at 882) (emphasis added).

As this court recently held, while the *Ex parte Young* doctrine allows suits under § 1983 against individual state officers in their official capacities for prospective injunctive relief, it does not permit those claims to be brought against the Board of Trustees as an entity. *Minik v. Bd. of Trs. of Univ. of Ill.*, No. 18-cv-2101, Docket #44, at 23-24 (C.D. Ill. Feb. 25, 2019). See also *Cannon v. Univ. of Health Sciences/Chi. Med. Sch.*, 710 F.2d 351, 356 (7th Cir. 1983); *Kaimowitz v. Bd. of Trs. of the Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991).

Section 1983 "only permits an individual to sue a 'person' who deprives that individual of his or her federally-guaranteed rights under color of state law." *Minik*, Docket #44 at 24 n.8 (quoting *Snyder v. King*, 745 F.3d 242, 246 (7th Cir. 2014)). The Board of Trustees cannot be sued under § 1983 because it is not a "person" within the meaning of § 1983. *Id.*

Because the University has not waived its Eleventh Amendment immunity from suit in federal court under § 1983 and Plaintiff does not charge any individual defendant with a Constitutional violation under color of state law, and because Plaintiff may not sue the Board of Trustees under § 1983, Plaintiff's due process claims cannot prevail, he has failed to show a likelihood of success on the merits of his claim *against*

7

*the Defendant he has chosen to name*. That being said, if Plaintiff were to have sued an appropriate defendant, based on the analysis of his breach of contract claim below, Plaintiff would have shown some likelihood of success in that the hearing he received afforded him less than the full protections of procedural due process.

### b. Breach of Contract Claim

The court has found, as discussed in the Findings of Fact above, that Plaintiff had a contract with the University that provided, among many other terms, that Plaintiff would not be disciplined (in this case, dismissed from the University) without due process of law.

This court recently stated that

> To comport with due process, expulsion procedures must provide a student with a meaningful opportunity to be *heard*. *Remer v. Burlington Area School District*, 286 F.3d 1007, 1010 (7th Cir. 2002). Defendant's process, in the court's mind, is sorely lacking in providing an accused with that meaningful opportunity. An accusation of sexual assault is an extremely serious charge, which can carry legal, personal, and pecuniary consequences for the accused. The stigma which can come from such an accusation and the resulting finding of guilt, even if not from a criminal court, but rather an educational administrative body, is severe, serious, and can follow a person for years. The investigative and adjudicative process employed by Defendant falsely emulates a criminal inquiry, but lacks the ability of the accused to confront witnesses, be heard, or testify before the deciding panel. Telling one's side of the story to an investigator, and having a chance to make corrections to that investigator's report, is not a real opportunity to be heard.
>
> Further, having an "impartial" investigator present their report to the Panel, and make proclamations on the credibility of individuals involved in the case, is a poor substitute for allowing an accused to appear in person and defend themselves. The court does not believe that Defendant needs to implement a full blown criminal trial with counsel, the right to cross examine witnesses, or the reasonable doubt standard, but, at the very minimum, an accused party should

be able to present his or her case to the person or people who *actually decide their fate*.

*Doe v. The Bd. of Trs. of the Univ. of Ill.*, No. 17-cv-2180, Docket #54, at 24-25 (C.D. Ill. July 24, 2018) (emphasis in original).

Based on the parties' contract promising Plaintiff due process in any disciplinary hearing, and this court's analysis in the prior *Doe v. The Board of Trustees of the University of Illinois* action that the University's process at the relevant time was likely insufficient, Plaintiff has shown some likelihood of success on his breach of contract claim.

The court rejects Plaintiff's breach of contract claim insofar as it alleges that Plaintiff fully performed under the contract and the University is withholding his degree in breach of the contract. The only breach the court finds Plaintiff has demonstrated a likelihood of success on is the University's breach of its promise to provide him with procedural due process in the conduct of his disciplinary hearing.

### c. Title IX Erroneous Outcome Claim

Plaintiff's Title IX gender discrimination claim is based on an "erroneous outcome" theory. To state an erroneous outcome claim, a plaintiff must "allege particular facts sufficient to cast doubt on the accuracy of the outcome of the proceedings and then also allege particular circumstances suggesting gender bias was a motivating factor behind the erroneous finding." *Doe v. Purdue Univ.*, 281 F. Supp. 3d 754, 774 (N.D. Ind. 2017) (citation omitted). Allegations of "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding …

might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Ludlow v. Northwestern Univ.*, 125 F. Supp. 3d 783, 792-93 (N.D. Ill. 2015).

Plaintiff fails to allege, or present any evidence, even by way of affidavit, any facts to support this court finding that he has a likelihood of success on his claim that the *outcome* of his case was erroneous.

The court has concluded that Plaintiff has made a showing of some likelihood of success on his claim that the University breached their promise to provide him Constitutionally adequate process, as discussed above. However, Plaintiff alleges no facts to support his conclusion that the *determination* reached by the second panel and upheld by the appellate committee was erroneous. Plaintiff does not, for instance, state that the panel or appellate committee ignored critical evidence that would have led to a different outcome or that he was prohibited from presenting such evidence to the investigators. The Alleged Victim and Plaintiff consumed alcohol (specifically vodka and orange juice) together. Plaintiff acknowledged that the Alleged Victim became drunk and confirmed that at one point she began to cry and get emotional. The facts Plaintiff alleges regarding the instance of sexual contact that was ultimately deemed to violate the Code show that the Alleged Victim consumed a quantity of alcohol, vomited, fell asleep, regained consciousness, and thereafter Plaintiff, knowing these facts, engaged in sexual intercourse with her. These facts, taken in context with all the

other facts alleged in the Complaint, do not demonstrate a likelihood of success on Plaintiff's claim that the University's outcome was erroneous.

Plaintiff has also failed to put forth any facts to create a plausible inference that *gender bias* caused the alleged erroneous outcome. See *Purdue*, 281 F. Supp. 3d at 775; *Ludlow*, 125 F. Supp. 3d at 792. The University has not conceded that any of their policies, staff, or procedures were affected by gender bias. In support of his claim of gender bias, Plaintiff alleges generally that the University was pressured by the Department of Education to comply with its 2011 guidance regarding sexual misconduct proceedings, that the University was "further pressured to make an example out of male students … due to increased negative media attention," that the University's training materials were biased; and that male students are "presumed guilty" or "presumed to have engaged in sexual misconduct in situations where both students have consumed alcohol."

These vague, conclusory, and factually unsupported allegations of a general bias on the part of the University are insufficient to support a likelihood of success on Plaintiff's claim that gender bias was a motivating factor behind the alleged erroneous finding in Plaintiff's case. See *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 955 (N.D. Ill. 2017); *Blank v. Knox Coll.*, No. 14-cv-1386, 2015 WL 328602, at *2-4 (C.D. Ill. Jan. 26, 2015); *Ludlow*, 79 F. Supp. 3d at 835-36; *Doe v. Colgate Univ.*, 2017 WL 4990629, at *11–18 (N.D.N.Y. Oct. 31, 2017), *aff'd*, --- Fed. App'x ---, 2019 WL 190515 (2d Cir. Jan. 15, 2019). Plaintiff's Complaint fails to satisfy the fundamental requirement of any Title IX

discrimination claim: alleged mistreatment on the basis of sex in connection with an education program. See *Columbia Coll.*, 299 F. Supp. 3d at 950-51.

### d. Likelihood of Success on Relief Sought

A district court has considerable discretion in deciding whether to issue a temporary restraining order. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). Preliminary injunctive relief traditionally takes the form of maintaining the status quo, but here Plaintiff asks the court to upend the status quo and, rather than require the University to provide him with a fair hearing, *award him his MBA degree*, on or before April 1, 2019, no less. The court finds Plaintiff has taken an unwarranted logical leap from "I received less than full due process" to "I win on the merits of the charges against me and therefore I get my degree."

While plaintiff has some likelihood of success on his breach of contract claim (and due process claim if an appropriate defendant were sued), he has not demonstrated any likelihood that he would succeed in being awarded the relief he requests here, namely, conferral of his MBA degree. If plaintiff prevailed on his breach of contract or due process claims he may be entitled to money damages, but in terms of injunctive relief, based on the facts this court has found from the limited record at hand, the most Plaintiff would be entitled to would be a new hearing.

The issue with the University's discipline of Plaintiff was not the fact of the disciplinary hold; at the hearing on March 28, 2019, Plaintiff agreed that the disciplinary hold appeared to comply with the Code and Statutes. The issue was and is whether the

12

*disciplinary hearings* afforded Plaintiff procedural due process. If they did not, the appropriate remedy would appear to be a disciplinary hearing that affords Plaintiff due process. If, after being afforded due process, Plaintiff's dismissal from the University is still upheld, then he would not be entitled to his degree. If he prevailed in the hearing, the disciplinary hold would be lifted and he would be entitled to his degree. If he were to prevail, and if he suffered damages in the interim, he could pursue money damages here. But, at the March 28, 2019, hearing, Plaintiff confirmed that the relief he seeks is conferral of the MBA degree; Plaintiff specifically stated that he is *not* at this time requesting that the court order injunctive relief in the form of a new disciplinary hearing.

      This court has specifically found that plaintiff does not have a likelihood of success on his Title IX erroneous outcome claim. Further, the results of a new hearing are not knowable at this time.

      Therefore, while Plaintiff has shown a likelihood of obtaining some success on the merits, he has not meaningfully done so for the purposes of his request for a Preliminary Injunction, where the sole relief he seeks in his motion does not logically flow from the modicum of success he appears likely to obtain.

      The court reiterates that it has not found that Plaintiff has shown a likelihood of success on his breach of contract claim insofar as he claims that he met all his obligations under the contract (including paying tuition, completing academic standards, and meeting all other specified requirements) and is therefore entitled to his

degree. The terms of the contract provide that Plaintiff's account will be under a disciplinary hold while disciplinary proceedings against him are pending, and that hold may be continued if the proceedings are resolved against him, which they were here. The only breach of contract claim on which the court has found has a likelihood of success on the merits is his claim that the University breached its promise to provide him with due process. The logical remedy would be a new hearing, not conferral of his degree.

If Plaintiff were to have asked this court for injunctive relief in the form of a new hearing, the court may have been inclined to grant such a request. He appears to have a strong likelihood of success in obtaining *that* result. (Although certainly not declaring it, there was even a possible indication from Defense counsel that such a new hearing might be agreed). However, when pressed on that point by the court at the March 28, 2019, hearing, Plaintiff's counsel specifically declined to indicate that he was in any way requesting a new hearing as an alternative request for relief. Because Plaintiff has not requested it, the court declines to order it.

    C. Conclusion

Because Plaintiff has failed to establish a likelihood of success on the merits, further analysis of the subsequent steps in the preliminary injunction analysis, including irreparable harm, lack of remedy at law, and balancing of the interests, are unnecessary. The court concludes that Plaintiff is not entitled to a preliminary injunction or any other relief at this time. Plaintiff's Motion for Preliminary Injunction

and/or Temporary Restraining Order (#4) is DENIED.

IT IS THEREFORE ORDERED THAT:

1) Plaintiff's Motion for Preliminary Injunction and/or Temporary Restraining Order (#4) is DENIED.

2) This case is referred to Magistrate Judge Long for further proceedings.

ENTERED this 1st day of April, 2019.

<u>s/ Colin Stirling Bruce</u>
COLIN S. BRUCE
U.S. DISTRICT JUDGE